**Doris BRUNETTE, Plaintiff,**

v.

**Jimmy DANN, Individually and as Chief Judge of Fort Hall Tribal Council, the Fort Hall Business Council; and the Shoshone-Bannock Tribes, Inc., Defendants.**

Civ. No. 4–73–36.

United States District Court,
D. Idaho.

Aug. 10, 1976.

Gus Carr Anderson, Pocatello, Idaho, for plaintiff.

Dwight R. Bowen, Idaho Falls, Idaho, for defendants.

## MEMORANDUM DECISION AND ORDER

J. BLAINE ANDERSON, Circuit Judge.

This action is presently before the court on defendants' Motion for Summary Judgment. The hearing was held June 14, 1976. The grounds in support of the motion are: plaintiff's failure to exhaust her Tribal remedies, failure to state a cause of action against the defendant Tribe, immunity of the defendant Tribe and defendant Dann, and failure to allege and produce sufficient (or any) facts to support a finding of conspiracy. Plaintiff's complaint seeks damages for the deprivation of her civil rights protected under the Indian Civil Rights Act of 1968. 25 U.S.C. §§ 1301–1303.

### FACTS

In April, 1973, the plaintiff was an Associate Judge of the Fort Hall Tribal Court. The defendant Dann was the Chief Judge of that court. On April 6, 1973, a civil complaint was filed with the Tribal Court. The defendant Dann testified in his deposition that on April 6, 1973, he assigned the case to the plaintiff. A subsequent hearing on the matter was set for April 30, 1973, at 10:00 A.M. The plaintiff testified in her deposition that April 30th was the first day she was assigned to the case. On April 30, 1973, the plaintiff was late for the 10:00 A.M. hearing. Defendant Dann testified that they waited approximately 1½ hours

for the plaintiff and when she did not show, he reassigned the case to another judge. He testified that his reasons for the reassignment were the plaintiff's tardiness and the fact that an affidavit of prejudice had been filed against the plaintiff. Upon plaintiff's arrival later in the day on April 30, 1973, defendant Dann testified that he informed the plaintiff of the reassignment. The plaintiff denies 'this.

The hearing was set over until May 2, 1973, at which time the plaintiff appeared, assumed the bench and proceeded with the case. Defendant Dann approached the bench and suggested that she disqualify herself from the case, which she refused to do. The plaintiff proceeded with the case and scheduled another hearing for May 4, 1973, at which she would render her decision in the case.

On May 4, 1973, the plaintiff again appeared and opened court. Defendant Dann testified that it was his usual procedure to open court, explain the procedures to be followed and the Associate Judges would then appear and proceed with their cases. When defendant Dann learned that the plaintiff had appeared and opened court a few minutes prior to the 10:00 A.M. scheduled time, he again approached the bench and asked that the plaintiff disqualify herself. Some discussion and argument ensued and the plaintiff found the defendant Dann in contempt.[1] Defendant Dann told the plaintiff to remove herself from the bench or she would be found in contempt. The plaintiff did not so remove herself, whereupon the defendant Dann filed a contempt complaint, issued an arrest warrant and had the plaintiff arrested.

Plaintiff was subsequently terminated from her position by the Business Council. Plaintiff was notified by mail (Exhibit attached to defendant's affidavit in support of summary judgment) on May 17, 1973, that a hearing would be held on May 29,

1973, to determine if she should be removed from her position. The plaintiff did not appear at such hearing due to some confusion on her part that the hearing had been continued; however, the plaintiff's attorney did appear. At the hearing the Business Council voted 4 to 0 to remove plaintiff from her position.

At the hearing on the Summary Judgment Motion the Constitution, By-Laws and Corporate Charter of the Tribe was admitted as defendants' Exhibit No. 1, as was defendants' Exhibit No. 2, the Tribe's Law & Order Code.

The controlling issues are dealt with separately.

## JURISDICTION

Plaintiff alleges that jurisdiction is properly conferred upon this court pursuant to 28 U.S.C. § 1343(4). In the very recent case of *Howlett v. The Salish and Kootenai Tribes,* 529 F.2d 233 (9th Cir. 1976), the court had occasion to discuss jurisdiction over claims under the Indian Civil Rights Act of 1968, 25 U.S.C. §§ 1301–1303. The court stated:

"In finding jurisdiction, the district judge concluded: 'The court is of the opinion that any action charging a violation of the Indian Civil Rights Act, 25 U.S.C. §§ 1301–03, 1311–12, 1321–26, 1331, 1341, is within the jurisdiction of the court by virtue of the provisions of 28 U.S.C. § 1343(4). That what was done may not violate the Indian Civil Rights Act is not material. The court has jurisdiction to determine whether it did or not.'" At page 236.

The Court of Appeals affirmed the district judge's finding of jurisdiction. *Accord: Crowe v. Eastern Band of Cherokee Indians, Inc.,* 506 F.2d 1231 (4th Cir. 1974); *Luxon v. Rosebud Sioux Tribe of South Dakota,* 455 F.2d 698 (8th Cir. 1972).

---

1. There is a dispute in the record as to which date the defendant Dann was found in contempt. The plaintiff believes she found him in contempt on May 2, 1973, and the defendant believes he was found in contempt on May 4, 1973. Nevertheless, it is undisputed that at some time the defendant Dann was found in contempt by the plaintiff.

■ Concomitant with the finding of jurisdiction is the Tribe's argument that the Shoshone-Bannock Tribe has quasi-sovereign immunity and may not be sued without its consent unless specific jurisdiction is granted to federal courts by Congress.

In *Johnson v. Lower Elwha Tribal Community, etc., Wash.*, 484 F.2d 200 (9th Cir. 1973), the court stated:

" . . . the Indian Civil Rights Act creates a substantive body of rights, patterned in part on the Bill of Rights, to 'extricate the individual Indian' from decisions holding that a controversy between an Indian and his trial (sic) government was an internal controversy. (cites omitted) *This legislation at least by implication has waived whatever immunity Indian tribes had in this area prior to its enactment.*" (emphasis supplied) At page 203.

*Accord: Seneca Constitutional Rights Organization v. George*, 348 F.Supp. 48 (W.D. N.Y.1972); *Loncassion v. Leekity*, 334 F.Supp. 370 (D.N.M.1971). Section 5(i) of the Corporate Charter provides that the Tribe may "sue and . . . be sued in courts of competent jurisdiction within the United States; . . . " This is a court of competent jurisdiction.

## EXHAUSTION OF REMEDIES

The defendants contend that before this court may take jurisdiction, it must be shown that the tribal administrative and judicial remedies have been exhausted. Defendants also point to the failure of the plaintiff to allege any facts that she has exhausted such remedies or that any attempt to do so would be futile. It is undisputed that plaintiff has not exhausted remedies available to her.

■ The exhaustion principle is applicable to federal review of tribal actions under the Indian Bill of Rights, but exhaustion is not an inflexible requirement. *United States ex rel. Cobell v. Cobell*, 503 F.2d 790 (9th Cir. 1974); *O'Neal v. Cheyenne River Sioux Tribe*, 482 F.2d 1140 (8th Cir. 1973). The *Cobell* court, *supra*, citing the *O'Neal* case, *supra*, stated:

"A balancing process is evident; that is weighing the need to preserve the cultural identity of the tribe by strengthening the authority of the tribal courts, against the need to immediately adjudicate alleged deprivations of individual rights. Thus this Court must determine whether exhaustion is appropriate in the case at bar." At page 793.

The record in the present case is clear that plaintiff did have Tribal remedies available to her. Only in plaintiff's brief is there an allegation that any appeal would be taken directly to the defendants themselves and thus futile. This is not correct.

The Business Council is given plenary power:

"[t]o promulgate and enforce ordinances . . . providing for the maintenance of law and order and the administration of justice by establishing a reservation court and defining its duties and powers." Tribal Constitution, Art. VI, Sec. 1(k).

Also, "To adopt resolutions regulating the procedure of the council itself and of other tribal agencies and tribal officials of the reservation." Tribal Constitution, Art. VI, Sec. 1(r). Pursuant to these powers and duties, the Business Council has adopted a comprehensive Law and Order Code, Defs. Exh. # 2, and created a tribal court known as the Fort Hall Indian Court with civil and criminal jurisdiction and the power to deal with civil and criminal contempts. Law and Order Code, Ch. 1, Secs. 1, 2.1 and 13.

The Law and Order Code vests in the Chief Judge (Dann) responsibility "for the administration of the Court, the assignment of cases, and the management of the Court's calendar and business." Ch. I, Sec. 3.6. Additionally, "Sessions of the Fort Hall Indian Court for the trial of cases shall be under the direction of the Chief Judge." Ch. I, Sec. 4.

The Code establishes a systematic method of appeal and establishes an appellate court known as the Court of Appeals. The Court of Appeals consists of a trial judge (who, by definition, must be learned in the law) who did not hear the case originally and two tribal judges. Ch. I, Sec. 5. The Court of

Appeals has jurisdiction to review "final orders, commitments and judgments," and the appellant is entitled to a trial de novo. The Court of Appeals has broad power to affirm, reverse or direct entry of "an appropriate judgment." Ch. I, Sec. 5.1. Specific terms of the Court of Appeals are provided up to four times each year as court business requires, Ch. I, Sec. 5.2, and "any party" has an absolute right of appeal in the time (five days) and manner prescribed in Secs. 5.3, 5.4, 5.4.1 and 5.4.2 of Ch. I. If the appeal is perfected there is an automatic and absolute right to a stay of the "final order, commitment, or judgment" pending disposition of the appeal. Any judgment on appeal is final with certain exceptions not pertinent here. Ch. I, 5.5., also Ch. III, Sec. 22. A thorough search of the Law and Order Code fails to reveal any basis for the assertion of plaintiff that an appeal would be futile because it would be taken directly to these named defendants.

Plaintiff, a then associate tribal court judge, cannot be heard to say that she did not know of her appeal and stay rights or that the system established is ineffective or is an exercise in futility.

■ Ineffectiveness and futility cannot be established in the face of a deliberate bypass of tribal remedies that are explicitly provided in its system of judicial administration. *Morehead v. State of California,* 339 F.2d 170, 171 (9th Cir. 1964); *Pate v. Wilson,* 348 F.2d 900, 901 (9th Cir. 1965).

If Chief Judge Dann did not act properly, his actions could and should have been tested in the appellate processes of the Tribal Court of Appeals.

■ The same principles of comity that apply in federal court-state court relations are forcefully applicable in federal court-tribal court relations. Exhaustion of tribal court remedies in cases of this nature should be the rule, (*United States ex rel. Cobell v. Cobell, supra,* p. 796, dissent of Judge Dunniway), even though allegedly arising under the Indian Civil Rights Act of 1968. 25 U.S.C. Secs. 1301–1303. It is essential to the strengthening of the Tribe's "powers of self-government." 25 U.S.C. Sec. 1302.

## INVOLVEMENT OF THE SHOSHONE–BANNOCK TRIBE

■ The only allegation contained in plaintiff's complaint relative to the defendant Tribe is found in paragraph VII of the First Cause of Action. Said paragraph alleges that the Tribe is the corporate organizational body for the Indians and that the Tribe has the power to legislate, govern and prescribe rules. The remaining allegations relate to the conduct of the defendant Dann and the defendant Business Council. It is hard to visualize how this bare allegation states a cause of action against the Tribe unless the doctrine of respondeat superior applies. Assuming, without deciding, that the doctrine applies, there are no allegations nor any facts presented of supervisory power or control which could invoke respondeat superior. No facts were produced at the hearing. On motion for summary judgment the opposing party cannot rely on bare allegations in the pleadings or briefs. Rule 56(c), Fed.R.Civ.Proc.

## JUDICIAL IMMUNITY OF DEFENDANT DANN

■ The defendants contend that the defendant Dann, as Chief Judge, is immune from civil liability for his judicial acts. No direct authority for judicial immunity as applied in a tribal setting has been found or cited. However, the general doctrine and the reasoning and policy therefor as applied in § 1983 actions would appear to be applicable. The rule is that judges are immune from civil liability for damages for acts committed within their judicial jurisdiction. *Gregory v. Thompson,* 500 F.2d 59 (9th Cir. 1974); *Cadena v. Peraso,* 498 F.2d 383 (9th Cir. 1974).

■ The next question to be asked is whether the complained of acts fall within defendant Dann's judicial jurisdiction. Ch.

I, Sec. 3.6 of the Law and Order Code states:

> "The Chief Judge shall be responsible for the administration of the Court, the assignment of cases, and the management of the Court's calendar and business."

This provision gives the Chief Judge the authority to assign and reassign cases to the various judges, especially in light of plaintiff's tardiness at the original hearing set on April 30, 1973.

The plaintiff argues that once a case is assigned to a judge, the Chief Judge has no authority to reassign that case. Also, she argues that defendant Dann's sole reason for reassigning the case was the fact that an affidavit of prejudice was filed against the plaintiff. In support of this position, the plaintiff cites Ch. I, Sec. 3.9 of the Law and Order Code which states, in pertinent part:

> "The initial Judge shall pass on the adequacy of the Affidavit of Prejudice and enter the appropriate order either reassigning it to another Judge or retaining the case."

Plaintiff further argues that the initial act (reassignment) of the defendant Dann being outside his authority, the subsequent contempt for violation thereof is also outside his authority and no immunity will attach.

The crux of the case lies in the question of whether the defendant Dann had the power to reassign a case, having originally assigned it to the plaintiff. If he did have such power, it is undisputed that at least on May 2, 1973, he approached the bench with justification and informed the plaintiff that he had reassigned the case and that the plaintiff refused to remove herself from the bench, in direct violation of his order, thereby warranting the ensuing contempt citation. It is concluded on these facts that defendant Dann did have such power.

This interpretation of Ch. I, Sec. 3.6 of the Law and Order Code gives the Chief Judge the authority to control the handling of cases within the tribal court and his reassignment of the case was within such power. This power is also implicit in his duties as Chief Judge under the facts here and is a necessary adjunct of his duties to manage and supervise the judicial branch of tribal self-government.

## CONSPIRACY CLAIM

Plaintiff's first cause of action alleges that the defendant Dann and the defendant Business Council entered into a conspiracy to deprive plaintiff of her constitutional rights. There is an absence of facts in this record that would support the finding of any agreement or concerted action among the defendants. It is alleged that the defendant Dann acted in behalf of the defendant Business Council in holding the plaintiff in contempt of court. The only facts in support of this allegation are that the defendant Dann found plaintiff in contempt and the defendant Business Council terminated plaintiff as a result thereof. There is no evidence, direct or circumstantial, from which one could conclude or infer that there was any agreement of any kind connecting the two events in a wrongful conspiratorial manner.

Accordingly, the Court being fully advised;

IT IS HEREBY ORDERED that the defendants' motion for summary judgment is GRANTED and plaintiff's action is DISMISSED WITH PREJUDICE.

Summary Judgment of dismissal shall be entered forthwith.

Defendants are awarded their costs.