**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| ACRES BONUSING, INC; JAMES RAYMOND ACRES, *Plaintiffs-Appellants*, | No. 20-15959 |
| | D.C. No. |
| v. | 3:19-cv-05418-WHO |
| LESTER JOHN MARSTON; RAPPORT AND MARSTON, an association of attorneys; DAVID JOSEPH RAPPORT; COOPER DeMARSE; ASHLEY BURRELL; KOSTAN LATHOURIS; BOUTIN JONES, a California corporation; MICHAEL E. CHASE; DANIEL STOUDER; AMY O'NEILL; AMELIA F. BURROUGHS; MEGHAN YARNALL; ARLA RAMSEY; ANITA HUFF; THOMAS FRANK; JANSSEN MALLOY LLP, an association of attorneys; DARCY VAUGHN, *Defendants-Appellees*. | OPINION |

Appeal from the United States District Court
for the Northern District of California
William Horsley Orrick, District Judge, Presiding

Argued and Submitted February 12, 2021
San Francisco, California

Filed November 5, 2021

Before:  Andrew D. Hurwitz and Daniel A. Bress, Circuit
Judges, and Gary Feinerman,* District Judge.

Opinion by Judge Bress;
Concurrence by Judge Feinerman

**SUMMARY**\*\*

**Tribal Sovereign Immunity**

The panel affirmed in part and reversed in part the district court's dismissal on the ground of tribal sovereign immunity and remanded for further proceedings in a RICO action brought by Acres Bonusing, Inc., and James Acres.

Blue Lake Rancheria, a federally recognized Tribal Nation, sued Acres and his company in Blue Lake Tribal Court over a business dispute involving a casino gaming system.  Acres and Acres Bonusing prevailed in tribal court but brought suit in federal court against the tribal court judge and others.  The defendants fell into two general groups.  The Blue Lake Defendants consisted of tribal officials, employees, and casino executives and lawyers who assisted the tribal court.  The second group consisted of Blue Lake's outside law firms and lawyers.  The district court concluded

---

* The Honorable Gary Feinerman, United States District Judge for the Northern District of Illinois, sitting by designation.

** This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

that tribal sovereign immunity shielded all of the defendants from suit.

Reversing in part, and following the framework set forth in *Lewis v. Clarke*, 137 S. Ct. 1285 (2017), the panel held that tribal sovereign immunity did not apply because Acres sought money damages from the defendants in their individual capacities, and the Tribe therefore was not the real party in interest. The panel held that *Lewis* and similar Ninth Circuit case law were not distinguishable on the ground that the alleged tortious conduct occurred in the tribal court, which is part of the Tribe's inherently sovereign functions. The panel concluded that California Court of Appeal cases cited by the district court did not follow a proper analysis.

Affirming in part, the panel held that some of the defendants were entitled to absolute personal immunity, and the district court properly dismissed Acres's claims against them on that basis. As to the Blue Lake Defendants, the panel held that the judge, his law clerks, and the tribal court clerk were entitled to absolute judicial or quasi-judicial immunity.

The panel remanded for further proceedings as to the remaining defendants not entitled to absolute personal immunity.

Concurring in part and concurring in the judgment, Judge Feinerman wrote that he agreed with his colleagues on the disposition of this appeal, and parted company with only a certain aspect of the majority's analysis. Judge Feinerman wrote that a tribe is the real party in interest in a suit against tribal officers or agents, requiring dismissal on sovereign immunity grounds, if the judgment sought would (1) expend itself on the public treasury or domain, or (2) interfere with

the public administration, or (3) have the effect of restraining the tribe from acting, or compelling it to act.    Judge Feinerman agreed that this test's second component did not apply because a retrospective monetary judgment against the named defendants, based wholly on liability for their past conduct, would not interfere with the Tribe's administration of its own affairs.   Judge Feinerman, however, could not endorse the majority's suggestion that tribal sovereign immunity did not apply because "[a]ny relief ordered by the district court will not require Blue Lake to do or pay anything."   Judge Feinerman wrote that this rationale paid heed to the first and third components of the sovereign immunity test but left no room for independent operation of the second component.

## COUNSEL

James Acres (argued), Encinitas, California, pro se Plaintiff-Appellant.

Ronald H. Blumberg, Solana Beach, California, for Plaintiff-Appellant Acres Bonusing, Inc.

George Forman (argued), Jay B. Shapiro, Margaret C. Rosenfeld, Forman & Associates, San Rafael, California; Allison Lenore Jones, Gordon & Rees, LLP, San Diego, California; for Defendants-Appellees Lester Marston, Arla Ramsey, Thomas Frank, Anita Huff, "Rapport and Marston," David Rapport, Cooper DeMarse, Darcy Vaughn, Ashley Burrell and Kostan Lathouris.

Debra Steel Sturmer (argued), Jerome N. Lerch, Sara P. Douglass, Lerch Sturmer LLP, San Francisco, California, for Defendants-Appellees Boutin Jones Inc., Michael Chase, Daniel Stouder and Amy O'Neill.

Howard Smith (argued), Berman Berman Berman Schneider & Lowary, LLP, Los Angeles, California, Appellees-Defendants Janssen Malloy LLP, Megan Yarnall and Amelia Burroughs.

## OPINION

BRESS, Circuit Judge:

Blue Lake Rancheria, a federally recognized Tribal Nation, sued Acres Bonusing, Inc. ("ABI") and James Acres, ABI's owner, in Blue Lake Tribal Court over a business dispute involving a casino gaming system. Acres and his company prevailed. Unsatisfied, they then sued in federal court nearly everyone involved in the tribal court case, including the tribal court judge, his law clerks, the clerk of the tribal court, tribal officials, and outside law firms and lawyers that represented the Tribe. Acres sued everyone, it seems, except the Tribe itself.

The principal question in this appeal is whether, as the district court concluded, tribal sovereign immunity shielded all defendants from suit. We hold that the district court erred in that respect. Acres sought money damages from the defendants in their individual capacities. Under *Lewis v. Clarke*, 137 S. Ct. 1285 (2017), and our precedents, the Tribe was not the real party in interest and tribal sovereign immunity thus did not preclude this suit. Some of the defendants, however, are entitled to absolute personal

immunity, and the district court properly dismissed Acres's claims against them on that basis. There may yet be grounds to dismiss what remains of this case, but the district court did not reach these issues and we leave them to the district court on remand.

For the reasons we now explain, we affirm in part, reverse in part, and remand for further proceedings.

I

Because this appeal arises from the district court's grant of defendants' motion to dismiss, we recite the facts as set forth in the plaintiffs' complaint. *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 408 (9th Cir. 2020).

Blue Lake Rancheria ("Blue Lake" or the "Tribe") is a federally recognized Tribal Nation in Humboldt County, California. The Blue Lake Tribal Court is an arm of the Tribe. Blue Lake operates the Blue Lake Casino & Hotel under a Class III gaming compact with the State of California.

In 2010, the Casino purchased from ABI an "iSlot" gaming system, "a novel iPad based gaming platform" used for Las Vegas-style slot machine games. A dispute arose over the performance of the system and, ultimately, whether ABI needed to return a $250,000 deposit.

When ABI refused to return the funds, the Casino sued ABI and Acres in Blue Lake Tribal Court for breach of contract and fraud. Acres filed two cases in federal court to halt the tribal court case, but those efforts were unsuccessful. *See, e.g.*, *Acres v. Blue Lake Rancheria*, 692 F. App'x 894 (9th Cir. 2017).

The Casino's tribal court case initially proceeded before Chief Judge Lester Marston, a Blue Lake Tribal Court judge. After Acres raised repeated claims of bias and conflicts of interest, Chief Judge Marston recused.  Justice James N. Lambden, a retired justice from the California Court of Appeal, replaced him.  The next month, Boutin Jones, the law firm that had been representing Blue Lake in tribal court, withdrew.  The firm of Janssen Malloy replaced them as counsel.  In July 2017, Justice Lambden granted summary judgment to Acres.  The next month, he dismissed the claims against ABI.

Two years later, Acres and ABI filed this case in federal court.  They alleged eight causes of action against various configurations of defendants and sought millions of dollars in damages.  Acres and ABI allege that Blue Lake officials wrongfully pursued the tribal court case and were in a conspiracy with Chief Judge Marston.  Plaintiffs essentially press a malicious prosecution theory, with allegations of racketeering mixed in (the complaint alleges a violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961, *et seq.*).  According to the complaint, "Blue Lake and its confederates sought ruinous judgments, within a court they controlled, before a judge they suborned, on conjured claims of fraud and breach of contract."

The defendants fall into two general groups.  The first group, which we refer to as the Blue Lake Defendants, consists of tribal officials, employees, and casino executives, and lawyers who assist the tribal court (essentially, law clerks):

- Lester Marston, Chief Judge of the Blue Lake Tribal Court.

- Arla Ramsey, CEO of the Casino, Blue Lake's Tribal Administrator, a judge on the tribal court, and vice-chair of the Blue Lake Business Council.

- Thomas Frank, formerly an executive at the Casino and the Tribe's Director of Business Development. Frank verified the casino's discovery responses and filed declarations in the tribal court case.

- Anita Huff, the Clerk of the Blue Lake Tribal Court (as well as other roles not relevant here).

- David Rapport, described as the equivalent of the general counsel to the Tribe, who was also associated with Marston as sole practitioners. Rapport had no role in the tribal court case, but he helped defend against Acres's earlier federal lawsuits.

- "Rapport and Marston" (R&M), described as "an association of sole practitioners." R&M did not appear on behalf of Blue Lake in the tribal court case. Plaintiffs allege that R&M had a longstanding relationship with Blue Lake. Chief Judge Marston's declaration includes his resume on letterhead with the "Law Offices of Rapport and Marston," "Sole Practitioners," at the top.

- Ashley Rose Burrell, Cooper Monroe DeMarse, and Darcy Catherine Vaughn were allegedly Associate Judges of the Blue Lake Tribal Court. Along with Kostan Lathouris, they supported Chief Judge Marston by conducting legal research and preparing draft orders, essentially functioning as part-time law clerks for Chief Judge Marston while also performing work for clients, including Blue Lake

entities.    All four were allegedly associated with R&M.

The second group consists of Blue Lake's outside law firms and lawyers:

- Boutin Jones, Inc. and its lawyers Michael Chase, Dan Stouder, and Amy O'Neill (collectively, Boutin Jones) initially represented Blue Lake in the tribal court case and defended Blue Lake in Acres's earlier federal court actions against the Tribe.

- Janssen Malloy LLP and its lawyers Megan Yarnall and Amelia Burroughs (collectively, Janssen Malloy) replaced Boutin Jones in the tribal court case.  Ramsey allegedly selected Janssen Malloy.

The district court dismissed the case.  It held that tribal sovereign immunity barred the claims against all defendants because they "were acting within the scope of their tribal authority, *i.e.*, within the scope of their representation of Blue Lake Casino."  In the district court's view, tribal sovereign immunity applied because "adjudicating this dispute would require the court to interfere with the tribe's internal governance."  The court also concluded that judicial and quasi-judicial immunity independently barred the claims against most Blue Lake Defendants.  The defendants advanced other arguments for why Acres and ABI failed to state claims for relief, which the district court did not address.

ABI and Acres appealed.[1]

## II

We review issues of tribal sovereign immunity and personal immunity *de novo*. *See Pistor v. Garcia*, 791 F.3d 1104, 1110 (9th Cir. 2015); *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004).

## A

"Indian tribes are domestic dependent nations that exercise inherent sovereign authority over their members and territories." *Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe*, 498 U.S. 505, 509 (1991) (quotations omitted). A core attribute of sovereignty is immunity from suit. *Alden v. Maine*, 527 U.S. 706, 716–17 (1999); *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978). Indian tribes "remain separate sovereigns pre-existing the Constitution" and, absent congressional action, "retain their historic sovereign authority." *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 788 (2014) (quotations omitted). "Suits against Indian tribes are thus barred by sovereign immunity absent a clear waiver by the tribe or congressional abrogation." *Okla. Tax Comm'n*, 498 U.S. at 509.

This lawsuit is not against the Tribe or any tribal entity (such as the Blue Lake Tribal Court or the Casino). It is instead against tribal officers and employees and the outside lawyers that represented the Tribe in the tribal court case and ancillary litigation. The main question here is whether this

---

[1] Acres filed a similar suit in California state court which was also dismissed based on tribal sovereign immunity and personal immunity defenses. An appeal is pending.

damages suit against the defendants in their individual capacities—based on actions relating to a tribal court case—was properly dismissed on tribal sovereign immunity grounds.

Tribal sovereign immunity is "quasi-jurisdictional," in the sense that we do not raise the issue on our own. *Pistor*, 791 F.3d at 1110–11. Tribal sovereign immunity "may be forfeited where the sovereign fails to assert it and therefore may be viewed as an affirmative defense." *Id.* at 1111 (quotations and alterations omitted). But "[a]lthough sovereign immunity is only quasi-jurisdictional in nature, [Federal Rule of Civil Procedure] 12(b)(1) is still a proper vehicle for invoking sovereign immunity from suit." *Id.*

As a result, when a defendant timely and successfully invokes tribal sovereign immunity, we lack subject matter jurisdiction. *See, e.g.*, *Arizona v. Tohono O'odham Nation*, 818 F.3d 549, 562–63 (9th Cir. 2016) (holding that when tribal sovereign immunity applied, "the district court correctly concluded that it lacked subject matter jurisdiction"); *Miller v. Wright*, 705 F.3d 919, 927 (9th Cir. 2013) (holding that because the plaintiffs "failed to successfully challenge the Tribe's sovereign immunity, we affirm the district court's holding that it lacked subject matter jurisdiction to adjudicate the claims asserted against the Tribe"); *Alvarado v. Table Mountain Rancheria*, 509 F.3d 1008, 1015–16 (9th Cir. 2007) ("Sovereign immunity limits a federal court's subject matter jurisdiction over actions brought against a sovereign. Similarly, tribal immunity precludes subject matter jurisdiction in an action against an Indian tribe." (citations omitted)); *see also Pistor*, 791 F.3d at 1111 ("[A]s the tribal defendants invoked sovereign immunity in an appropriate manner and at an appropriate stage, i.e. in a Rule 12(b)(1) motion to dismiss,

if they *were* entitled to tribal immunity from suit, the district court would lack jurisdiction over the claims against them and would be required to dismiss them from the litigation.").

Because we may not issue a "judgment on the merits" and assume our "substantive law-declaring power" before first confirming we have jurisdiction, *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431, 433 (2007) (quotations omitted), we address tribal sovereign immunity at the outset.

B

Following the framework set forth in *Lewis v. Clarke*, 137 S. Ct. 1285 (2017), we hold that tribal sovereign immunity does not bar this action for damages against individual tribal employees and tribal agents in their personal capacities.

In *Lewis*, William Clarke, a tribal employee, was driving tribal casino patrons in a limousine when he rear-ended Brian and Michelle Lewis's vehicle. *Id.* at 1289. The Lewises sued Clarke for negligence in Connecticut state court. *Id.* Clarke argued the suit should be dismissed for lack of subject matter jurisdiction under the doctrine of tribal sovereign immunity because he was an employee of the tribal Gaming Authority "acting within the scope of his employment at the time of the accident." *Id.* The Connecticut Supreme Court agreed. *Id.* at 1290. But the United States Supreme Court did not. *Id.* at 1288.

"The protection offered by tribal sovereign immunity," *Lewis* held, "is no broader than the protection offered by state and federal sovereign immunity." *Id.* at 1292. A suit against a governmental official may be a suit against the sovereign, but not always. In these contexts, courts "look to

whether the sovereign is the real party in interest to determine whether sovereign immunity bars the suit." *Id.* at 1290. The critical question is "whether the *remedy sought* is truly against the sovereign." *Id.* (emphasis added); *see also Jamul Action Comm. v. Simermeyer*, 974 F.3d 984, 994 (9th Cir. 2020).

Whether the remedy sought is one against the sovereign or the individual officer turns on "[t]he distinction between individual- and official-capacity suits." *Lewis*, 137 S. Ct. at 1291. An official-capacity claim, although nominally against the official, "in fact is against the official's office and thus the sovereign itself." *Id.* In such suits, "when officials sued in their official capacities leave office, their successors automatically assume their role in the litigation." *Id.* Because the relief requested effectively runs against the sovereign, the sovereign is the real party in interest, and sovereign immunity may be an available defense. *See id.*

Suits against officials in their personal capacities, *Lewis* explained, are different. In those cases, the plaintiff "seek[s] to impose *individual* liability upon a government officer for actions taken under color of . . . law." *Id.* (quoting *Hafer v. Melo*, 502 U.S. 21, 25 (1991)). Then "the real party in interest is the individual, not the sovereign." *Id.* So, although the defendants "may be able to assert *personal* immunity defenses" (like the judicial immunity we discuss below), sovereign immunity does not bar the suit. *Id.*

Under *Lewis*, that same result obtains even if the sovereign agreed to indemnify the official for any liability. "[A]n indemnification provision cannot, as a matter of law, extend sovereign immunity to individual employees who would otherwise not fall under its protective cloak." *Id.* at 1292. The immunity "analysis turn[s] on where the potential *legal* liability l[ies], not from whence the money to pay the

damages award ultimately" comes. *Id.* Thus, "[t]he critical inquiry is who may be *legally bound* by the court's adverse judgment, not who will ultimately pick up the tab." *Id.* at 1292–93 (emphasis added).

Significantly, *Lewis* then held that the general rules governing sovereign immunity applied equally to tribal sovereign immunity. *Id.* at 1291. This meant that tribal sovereign immunity did not preclude the tort suit against Clarke: "in a suit brought against a tribal employee in his individual capacity, the employee, not the tribe, is the real party in interest and the tribe's sovereign immunity is not implicated." *Id.* at 1288. True, Clarke crashed into the Lewises while performing his job as a tribal employee. But that "an employee was acting within the scope of his employment at the time the tort was committed is not, on its own, sufficient to bar a suit against that employee on the basis of tribal sovereign immunity." *Id.*

The suit against Clarke was therefore not one against him in his official capacity but was merely a suit for damages based on Clarke's personal, allegedly tortious conduct. *Id.* at 1291. Tribal sovereign immunity could not apply because "the *judgment* will not operate against the Tribe." *Id.* (emphasis added); *see also id.* at 1293 (explaining that, in resolving the suit, "the Connecticut courts exercise no jurisdiction over the Tribe or the [tribal] Gaming Authority, and their judgments will not bind the Tribe or its instrumentalities in any way"). The Connecticut Supreme Court therefore erred in "extend[ing] sovereign immunity for tribal employees beyond what common-law sovereign immunity principles would recognize for either state or federal employees." *Id.* at 1291–92.

Precedents in our circuit forecast the Supreme Court's analysis in *Lewis*. *Pistor v. Garcia*, 791 F.3d 1104 (9th Cir.

2015), contains our most substantial treatment of the tribal sovereign immunity issue and is instructive here.

The plaintiffs in *Pistor* were "advantage gamblers" who won big at an Apache tribal casino. *Id.* at 1108. The Chief of the tribal police department, the General Manager of the casino, and a Tribal Gaming Office Inspector took the gamblers from the casino floor, handcuffed them, and questioned them in interrogation rooms. *Id.* The tribal defendants also took from plaintiffs "significant sums" of cash and other personal property. *Id.* at 1108–09. The gamblers sued the tribal defendants for damages both under state tort law and under 42 U.S.C. § 1983 for violating their Fourth and Fourteenth Amendment rights. *Id.* at 1109. We held that tribal sovereign immunity did not bar the suit. *Id.* at 1115.

Anticipating *Lewis*, *Pistor* emphasized that the same principles that "shape state and federal sovereign immunity" apply to tribal sovereign immunity. *Id.* at 1113 (quoting *Maxwell v. County of San Diego*, 708 F.3d 1075, 1087–88 (9th Cir. 2013)). *Pistor* explained that the tribal sovereign immunity analysis turns on whether the suit is against the tribal official in his personal or official capacity, and thus whether "any remedy will operate against the officers individually, and not against the sovereign." *Id.* (discussing the "remedy-focused analysis" that applies for tribal sovereign immunity (quotations omitted)).

Tribal sovereign immunity did not bar the gamblers' claims in *Pistor* because "the defendants were sued in their individual rather than their official capacities, as any recovery will run against the individual tribal defendants, rather than the tribe." *Id.* at 1108. The gamblers had not sued the Tribe itself and were not seeking money directly from the tribal treasury. *Id.* at 1113–14. Again presaging

*Lewis*, we further held that "[e]ven if the Tribe agrees to pay for the tribal defendants' liability," "'[t]he unilateral decision to insure a government officer against liability does not make the officer immune from that liability.'"  *Id.* at 1114 (quoting *Maxwell*, 708 F.3d at 1090).

Our earlier decision in *Maxwell v. County of San Diego*, 708 F.3d 1075 (9th Cir. 2013), tracks *Lewis* and *Pistor*.  In *Maxwell*, we held that two tribal employees could not invoke tribal sovereign immunity in a damages suit against them for providing allegedly deficient medical care following a shooting incident.  *Id.* at 1087.  Hearkening to the sovereign immunity principles that apply to state and federal sovereign immunity, we explained that the tribal paramedics "do not enjoy tribal sovereign immunity because a remedy would operate against them, not the tribe."  *Id.*  Because the plaintiffs had sued the tribal employees in their personal capacities for money damages, tribal sovereign immunity did not apply.  *Id.* at 1089.[2]

Applying *Lewis*, *Pistor*, and our earlier precedents to the case before us, we conclude that tribal sovereign immunity does not bar this suit.  Acres and ABI seek money damages against the defendants in their individual capacities.  Any relief ordered by the district court will not require Blue Lake to do or pay anything.  Because any "judgment will not operate against the Tribe," *Lewis*, 137 S. Ct. at 1291, Blue Lake is not the real party in interest, and tribal sovereign immunity does not apply.

---

[2] On remand, the district court granted summary judgment to the tribal paramedics based on qualified immunity, and this Court affirmed. *Maxwell v. County of San Diego*, 714 F. App'x 641, 644 (9th Cir. 2017). That result shows how tribal defendants in individual capacity suits can still enjoy personal immunity defenses, an issue we take up below.

The district court concluded otherwise on the theory that "all of the defendants were functioning as the Tribe's officials or agents when the alleged acts were committed." The defendants similarly argue that "a Tribe's sovereign immunity extends not only to its arms, but also to tribal officials and agents, including legal counsel, when they act in their respective official capacities and within the scope of the authority the Tribe lawfully may confer upon them." But as we explained in *Pistor*, "tribal defendants sued in their *individual* capacities for money damages are not entitled to sovereign immunity, even though they are sued for actions taken in the course of their official duties." 791 F.3d at 1112. That is the same principle that the Supreme Court reaffirmed two years later in *Lewis*. *See* 137 S. Ct. at 1288.

C

The defendants' primary response to the foregoing is that this case is different because the tortious conduct allegedly occurred in tribal court, and tribal courts are part of the Tribe's inherently sovereign functions. The district court had a similar perspective. It viewed *Lewis*, *Pistor*, and *Maxwell* as distinguishable because the wrongs alleged in those cases were "garden variety torts with no relationship to tribal governance and administration." It therefore thought that "the real party in interest here is the tribe because adjudicating this dispute would require the court to interfere with the tribe's internal governance." This reasoning, while understandable, does not comport with *Lewis*, *Pistor*, and our other prior cases.

The district court and defendants relied most heavily on the following passage from *Maxwell*:

> In any suit against tribal officers, we must be sensitive to whether "the judgment sought

> would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the sovereign from acting, or to compel it to act."

708 F.3d at 1088 (quoting *Shermoen v. United States*, 982 F.2d 1312, 1320 (9th Cir. 1992)) (alterations omitted); *see also Pistor*, 791 F.3d at 1113 (same).  This language was itself a formulation of general sovereign immunity principles from earlier Supreme Court cases, *see, e.g.*, *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 n.11 (1984); *Dugan v. Rank*, 372 U.S. 609, 620 (1963), although not a particular formulation that the Supreme Court has invoked recently.

Defendants point specifically to the reference to "interfer[ing] with the public administration" of the tribe. Reading this language broadly, defendants assert that a case against tribal officers and employees about a past tribal court case has a relationship to tribal governance and will therefore interfere with it.

Although the quoted excerpt caused some confusion here, properly considered, this passage does not make the tribal sovereign immunity analysis turn on a freestanding assessment of whether the suit related to tribal governance in some way.  Nor did it create special rules for cases involving "garden variety" torts.  Instead, this passage is fully consistent with the "remedy-focused analysis," *Maxwell*, 708 F.3d at 1088, that the Supreme Court validated in *Lewis*.

That passage framed the inquiry in terms of whether "*the judgment sought* would . . . interfere with the public administration, or if the effect *of the judgment* would be to

restrain the sovereign from acting, or to compel it to act." *Maxwell*, 708 F.3d at 1088 (quotations and alterations omitted) (emphasis added); *see also Lewis*, 137 S. Ct. at 1291 (explaining that tribal sovereign immunity does not apply when "the *judgment* will not operate against the Tribe" (emphasis added)).

The tribal sovereign immunity inquiry thus does not revolve around whether issues pertaining to tribal governance would be touched on in the litigation. The question is whether "any *remedy* will *operate* . . . against the sovereign." *Pistor*, 791 F.3d at 1113 (emphasis added). Or as the Supreme Court put it, "[t]he critical inquiry is who may be legally bound by the court's adverse judgment." *Lewis*, 137 S. Ct. at 1292–93. References to "interfering with the public administration" of the tribe can thus only be understood in connection with the fundamental principle that the "remedy sought" governs the tribal sovereign immunity analysis. *See id.* at 1290; *Maxwell*, 708 F.3d at 1088. As we recognized in *Pistor*, where a plaintiff sought "'money damages not from the tribal treasury but from the tribal defendants personally,'" "*[g]iven the limited relief sought*, the tribal defendants have not shown that 'the judgment would . . . interfere with tribal administration.'" 791 F.3d at 1113–14 (quoting *Maxwell*, 708 F.3d at 1088) (emphasis added; alterations omitted).[3]

---

[3] Our fine colleague in concurrence suggests we have "diminish[ed]" or even "excise[d]" the "interference" prong of the sovereign immunity test. That is not correct. We have merely applied that prong according to its terms, which asks whether "*the judgment sought* would . . . interfere with the public administration" of the tribe. *Maxwell*, 708 F.3d at 1088 (quotations and alterations omitted) (emphasis added). That is consistent with our decision in *Palomar Pomerado Health System v. Belshe*, 180 F.3d 1104 (9th Cir. 1999), on

Confirming this point, neither *Lewis* nor our prior cases evaluated the degree to which the suits could involve consideration of issues that relate to tribal governance or administration. Such an analysis would likely prove difficult because any suit against a tribal employee for conduct in the course of her official duties almost inevitably has some valence to tribal governance. And if that were the test, we would seemingly end up applying tribal sovereign immunity whenever a tribal employee was acting within the scope of her employment—which is precisely what the Supreme Court in *Lewis* said not to do. *See* 137 S. Ct. at 1288.

*Pistor* provides a good example of why the sovereign immunity analysis does not turn on any perceived distinction between "garden variety torts" and ones with a "relationship to tribal governance." *Pistor* was a suit against a tribal police chief and other tribal officials relating to the detention, seizure, and interrogation of persons that tribal officials claimed were engaged in unlawful gambling practices. *See* 791 F.3d at 1108–09. The lawful detention of persons and seizure of property is of course a core function of the sovereign. *Cf. United States v. Lara*, 541 U.S. 193, 199 (2004) (explaining that "the source of [the] power to punish" member and nonmember Indian offenders is a part of "inherent tribal sovereignty" (quoting *United States v. Wheeler*, 435 U.S. 313, 322 (1978)). If the suit in *Pistor* had

---

which the concurrence relies. In *Palomar*, the plaintiff, a state political subdivision, sued state employees seeking to enjoin their enforcement of state regulations. *Id.* at 1105–07. We held that the action was really one against the state itself because "the purpose of the injunction and other orders [plaintiff] seeks is to 'restrain the Government,'" such that "*[t]he result* [plaintiff] seeks would 'interfere with the public administration.'" *Id.* at 1108 (emphasis added). Here, the judgment sought would not have that effect because "any recovery will run against the individual tribal defendants, rather than the tribe." *Pistor*, 791 F.3d at 1108.

gone forward, litigation over the gamblers' claims could well involve consideration of the tribe's law enforcement practices, which might in turn influence how the tribe approached these issues going forward.

But if those were the benchmarks for tribal sovereign immunity, *Pistor* should have come out the other way. Nor do we think *Pistor* can be fairly described as a "garden variety" tort case. Just as there was no "search and seizure" exception to tribal sovereign immunity's "remedy-focused analysis," there is likewise no exception for malicious prosecution claims, even though this case (if otherwise allowed to proceed) could touch on tribal court practices, as the district court surmised. Instead, because plaintiffs' suit for damages against tribal employees and agents "will not require action by the sovereign or disturb the sovereign's property," and any "judgment will not operate against the Tribe," tribal sovereign immunity does not apply. *Lewis*, 137 S. Ct. at 1291.

Our prior decisions in *Cook v. AVI Casino Enterprises, Inc.*, 548 F.3d 718 (9th Cir. 2008), and *Hardin v. White Mountain Apache Tribe*, 779 F.2d 476 (9th Cir. 1985), do not compel a different conclusion. In *Cook*, the plaintiffs asserted a respondeat superior theory of liability that would have made the tribe liable for the tribal official's actions. *See* 548 F.3d at 727 ("Here, Cook has sued Dodd and Purbaugh in name but seeks recovery from the Tribe; his complaint alleges that ACE [a tribal corporation] is vicariously liable for all actions of Dodd and Purbaugh."). We thus held the suit barred by sovereign immunity because the tribe was the real party in interest. *Id.* As we explained in *Maxwell*, the plaintiff in *Cook* "had sued the individual defendants in their official capacities in order to establish vicarious liability for the tribe," which meant that *Cook*'s invocation of tribal

sovereign immunity was "consistent with the remedy-focused analysis" that properly governs the sovereign immunity inquiry. 708 F.3d at 1088; *see also Pistor*, 791 F.3d at 1113 (analogous discussion of *Cook*).

In *Hardin*, the plaintiff, who had resided on reservation land leased from the tribe, was convicted of concealing property stolen from a federal observatory on the reservation. 779 F.2d at 478–79. After the tribal council voted to exclude him from the reservation, he sued the tribe, tribal entities, and tribal officials for injunctive relief and damages, challenging his ejectment. *Id.* at 478. We held that the tribe was protected by sovereign immunity and that the immunity "extends to individual tribal officials acting in their representative capacity and within the scope of their authority." *Id.* at 479.

As we explained in *Maxwell*, although "*Hardin* did not mention the 'remedy sought' principle when it granted sovereign immunity," "it did not need to do so" because "*Hardin* was in reality an official capacity suit." 708 F.3d at 1089. The plaintiff in *Hardin* "did not (1) identify which officials were sued in their individual capacities or (2) the exact nature of the claims against them." *Id.* The lack of any such allegations and the nature of the relief sought indicated that the tribal officials were sued in their official capacities as part of the plaintiff's effort to challenge his removal from tribal lands. *See id.*

In short, neither *Cook* nor *Hardin* stand for the proposition that tribal sovereign immunity turns on a

freestanding inquiry into whether a suit involves a "garden variety" tort or generally relates to tribal governance.[4]

## D

The defendants also heavily rely on two cases from the California Court of Appeal cited by the district court: *Brown v. Garcia*, 225 Cal. Rptr. 3d 910 (Ct. App. 2017), and *Great Western Casinos Inc. v. Morongo Band of Mission Indians*, 88 Cal. Rptr. 2d 828 (Ct. App. 1999). These cases do not change the result.

In *Great Western*, the plaintiff sued the tribe, the tribal council, individual tribal members, counsel for the tribe, and a law firm that acted as the tribe's outside counsel, relating to the tribe's cancellation of a casino management agreement. 88 Cal. Rptr. 2d 828 at 831–32. After concluding that the tribe had not waived tribal sovereign immunity, *Great Western* held that the individual defendants were immune because the suit was "in substance against the tribe itself." *Id.* at 838.

In *Great Western*, the complaint "allege[d] no individual actions by any of the tribal officials on the tribal council named as defendants," and instead attacked the tribal council's decision to terminate the casino management agreement. *Id.* at 838–39; *see also id.* at 839 ("[I]t was the collective action by the tribal council after the votes which caused GWC's alleged injuries. . . . In other words, the

---

[4] Defendants' reliance on *Davis v. Littell*, 398 F.2d 83 (9th Cir. 1968), is also inapposite. *Davis* involved the issue of whether the tribe had "bestowed" on its officers the personal defense of absolute immunity. *See id.* at 84–85. Whether tribal officials enjoy personal immunities from suit is a different question from whether tribal sovereign immunity applies. *See Lewis*, 137 S. Ct. at 1291.

substance of the complaint's allegations concerning the individual Indian defendants are again in reality against the tribe's allegedly wrongful actions."). Properly considered, this aspect of *Great Western* simply concluded that based on the nature of the allegations, the suit was one brought against these tribal officials in their official capacities for actions taken by the tribe itself, such that tribal sovereign immunity would apply.

*Great Western* is less clear about its basis for granting immunity to the non-Indian counsel and outside law firm advising the tribe. Although *Great Western* stated that counsel "in allegedly advising the tribe to wrongfully terminate the management contract are similarly covered by the tribe's sovereign immunity," the court had earlier explained that the tribe "enjoys sufficient independent status and control over its own laws and internal relationships to be able to accord absolute privilege to its officers within the areas of tribal control." *Id.* at 840 (quoting *Davis*, 398 F.2d at 84). To the extent *Great Western* held that these lawyers were entitled to a personal immunity defense (essentially as quasi-executive officers), that conclusion would not on its own contravene *Lewis*. But to the extent *Great Western* extended tribal sovereign immunity to the individual defendants merely because they were sued for conduct within the scope of their employment for the tribe, that conclusion would be at odds with *Lewis* and not one we could follow. *See* 137 S. Ct. at 1288.

The reasoning in the California Court of Appeal's decision in *Brown*, 225 Cal. Rptr. 3d at 915–17, is likewise inconsistent with *Lewis* and our precedents. There, the plaintiffs sued other members of the tribe for damages based on allegedly defamatory statements they made in a tribal council order. *Id.* at 911. The California Court of Appeal

declined to follow the "remedy-focused general rule applied in *Maxwell*, *Pistor* and *Lewis*" because those cases, in its view, involved "garden variety torts with no relationship to tribal governance and administration." *Id.* at 916. For the reasons we set forth above, that is not the proper analysis for tribal sovereign immunity.

## III

Although tribal sovereign immunity does not bar this action, defendants may still avail themselves of personal immunity defenses. *See Lewis*, 137 S. Ct. at 1291 (explaining that although "sovereign immunity does not erect a barrier against suits to impose individual and personal liability," "[a]n officer in an individual-capacity action . . . may be able to assert *personal* immunity defenses, such as, for example, absolute prosecutorial immunity in certain circumstances" (quotations omitted)); *Pistor*, 791 F.3d at 1112.

The district court held in the alternative that the Blue Lake Defendants (except perhaps Ramsey and Rapport) were entitled to absolute judicial or quasi-judicial immunity. That determination was correct as to Chief Judge Marston, his law clerks, and the tribal court clerk.

Tribal officials, like federal and state officials, can invoke personal immunity defenses. In *Lewis*, the Supreme Court described the availability of personal immunity defenses in the context of discussing generally applicable principles of individual and official capacity suits, and then explained that "[t]here is no reason to depart from these general rules in the context of tribal sovereign immunity." 137 S. Ct. at 1291. Those "general rules" thus included possible common law personal immunity defenses. *See also id.* at 1292 n.2 (noting that "personal immunity defenses

[are] distinct from sovereign immunity" but declining to address Clarke's request for personal immunity as not before it).

Consistent with *Lewis*, various cases have addressed personal immunity defenses in the context of suits against tribal officials. *See, e.g.*, *Penn v. United States*, 335 F.3d 786, 789 (8th Cir. 2003) (judicial immunity); *Runs After v. United States*, 766 F.2d 347, 354–55 (8th Cir. 1985) (legislative immunity); *Oertwich v. Traditional Vill. of Togiak*, 413 F. Supp. 3d 963, 972 (D. Alaska 2019) (judicial immunity); *Grand Canyon Skywalk Dev., LLC v. Hualapai Indian Tribe*, 966 F. Supp. 2d 876, 885–86 (D. Ariz. 2013) (legislative immunity); *Sandman v. Dakota*, 816 F. Supp. 448, 452 (W.D. Mich. 1992) (judicial immunity); *Brunette v. Dann*, 417 F. Supp. 1382, 1386 (D. Idaho 1976) (judicial immunity); *cf. Kennerly v. United States*, 721 F.2d 1252, 1259–60 (9th Cir. 1983) (assuming, without deciding, that a *Bivens* or § 1983 action could be brought against tribal officials acting in conjunction with state or federal officials, and that "individual tribal officials would be entitled to claim the same qualified immunity accorded state and federal officials in section 1983 and *Bivens* actions").

Turning to the Blue Lake Defendants, we start with Chief Judge Marston. The district court correctly concluded that Chief Judge Marston enjoys absolute judicial immunity. "A long line of [Supreme Court] precedents acknowledges that, generally, a judge is immune from a suit for money damages." *Mireles v. Waco*, 502 U.S. 9, 9 (1991) (per curiam). That immunity extends to tribal court judges: "[a] tribal court judge is entitled to the same absolute judicial immunity that shields state and federal court judges." *Penn*, 335 F.3d at 789; *see also* Charles A. Wright, Arthur R. Miller & Richard D. Freer, 13D Fed. Prac. & Proc. Juris.

§ 3579 (3d ed., Apr. 2021 Update); William C. Canby., Jr., American Indian Law in a Nutshell 77 (7th ed. 2020); *Sandman*, 816 F. Supp. at 452; *Brunette*, 417 F. Supp. at 1386.

Courts have articulated only two circumstances in which judicial immunity does not apply. "First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 11–12 (citations omitted). "[W]hether an act by a judge is a 'judicial' one relate[s] to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." *Id.* at 12 (quoting *Stump v. Sparkman*, 435 U.S. 349, 362 (1978)). Because judicial immunity is an immunity from suit and not just from damages, it cannot be "overcome by allegations of bad faith or malice." *Id.* at 11.

We easily conclude that Chief Judge Marston is entitled to absolute judicial immunity. Acres and ABI challenge Chief Judge Marston's initial decision not to recuse, his rulings on procedural motions, his discussions about the case with attorneys functioning as his law clerks, and his eventual decision to recuse. These are all functions "normally performed by a judge" and for which the defendants "dealt with the judge in his judicial capacity." *Id.* at 12. And to the extent plaintiffs allege that Chief Judge Marston was conspiring against them, "a conspiracy between judge and [a party] to predetermine the outcome of a judicial proceeding, while clearly improper, nevertheless does not pierce the immunity extended to judges." *Ashelman v. Pope*, 793 F.2d 1072, 1078 (9th Cir. 1986) (en banc).

Defendant Anita Huff is also entitled to absolute immunity. Plaintiffs allege that Huff was the Clerk of the Blue Lake Tribal Court. Although plaintiffs allege that Huff also performed other roles for the tribe, they challenge only actions she took in her role as Clerk. "Court clerks have absolute quasi-judicial immunity from damages for civil rights violations when they perform tasks that are an integral part of the judicial process." *Mullis v. U.S. Bankr. Court for Dist. of Nev.*, 828 F.2d 1385, 1390 (9th Cir. 1987); *see also Moore v. Brewster*, 96 F.3d 1240, 1244 (9th Cir. 1996); *Sindram v. Suda*, 986 F.2d 1459, 1461 (D.C. Cir. 1993).

According to the plaintiffs, Huff issued an improper summons in the tribal court case and rejected a filing from Acres for not conforming with a tribal court rule. These actions were an integral part of the judicial process, *see Mullis*, 838 F.2d at 1390, and so Huff is entitled to absolute immunity.

The attorneys functioning as Chief Judge Marston's law clerks—defendants Burrell, DeMarse, Vaughn, and Lathouris—are also entitled to absolute immunity. We have explained that "[t]he concern for the integrity of the judicial process that underlies the absolute immunity of judges is reflected in the extension of absolute immunity to certain others who perform functions closely associated with the judicial process." *Moore*, 96 F.3d at 1244 (quotations omitted). That includes law clerks, because "a law clerk is probably the one participant in the judicial process whose duties and responsibilities are most intimately connected with the judge's own exercise of the judicial function." *Id.* (quotations omitted).

The plaintiffs allege that Burrell, DeMarse, Vaughn, and Lathouris functioned as law clerks, drafting orders and otherwise assisting Judge Marston. The complaint

alternatively refers to three of these attorneys as Associate Judges of the Tribal Court. Although the complaint also asserts that these defendants performed other outside work, that outside work does not form the basis of any of plaintiffs' claims. Burrell, DeMarse, Vaughn, and Lathouris were thus properly dismissed based on absolute immunity.

The complaint does not, however, allege that the remaining Blue Lake Defendants—Ramsey, Frank, Rapport, and R&M—performed a judicial or quasi-judicial role. At oral argument, the Blue Lake Defendants conceded that Ramsey, Frank, Rapport, and R&M would not be entitled to judicial or quasi-judicial immunity. The outside counsel defendants (Boutin Jones, Janssen Malloy, and the individual attorneys associated with those firms) also do not claim they are entitled to judicial immunity.

\*       \*       \*

Having concluded that tribal sovereign immunity does not bar this suit and that on this record only certain defendants enjoy absolute personal immunity, we remand this case to the district court. The defendants who remain in the case are Ramsey, Frank, Rapport, "Rapport and Marston," Boutin Jones, Chase, Stouder, O'Neill, Janssen Malloy, Yarnall, and Burroughs.

Various combinations of these defendants have made other arguments for why this case or certain claims should be dismissed. The district court has yet to rule on these issues. On remand, the district court can consider these and other arguments that the remaining defendants may advance,

including whether defendants are otherwise immune from suit on grounds the district court has yet to address.

All parties shall bear their own costs on appeal.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

---

FEINERMAN, District Judge, concurring in part and concurring in the judgment in part:

I agree with my colleagues on the disposition of this appeal, and part company with only a certain aspect of the majority opinion's analysis.

A tribe is the real party in interest in a suit against tribal officers or agents, requiring dismissal on sovereign immunity grounds, if "the judgment sought would [1] expend itself on the public treasury or domain, or [2] interfere with the public administration, or [3] if the effect of the judgment would be to restrain the [tribe] from acting, or to compel it to act." *Pistor v. Garcia*, 791 F.3d 1104, 1113 (9th Cir. 2015) (quoting *Maxwell v. Cnty. of San Diego*, 708 F.3d 1075, 1088 (9th Cir. 2013) (quoting *Shermoen v. United States*, 982 F.2d 1312, 1320 (9th Cir. 1992))). This disjunctive, three-part test is one that we and the Supreme Court have consistently articulated and applied when a party invokes sovereign immunity, be it federal, state, or tribal. *See*, *e.g.*, *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 n.11 (1984) ("The general rule is that a suit is against the sovereign if the judgment sought would expend itself on the public treasury or domain, *or* interfere with the public administration, *or* if the effect of the judgment would be to restrain the Government from acting,

or to compel it to act.") (emphasis added) (internal quotation marks omitted) (quoting *Dugan v. Rank*, 372 U.S. 609, 620 (1963)); *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 826-27 (1976) ("A suit against an officer of the United States is one against the United States itself . . . if the judgment sought would expend itself on the public treasury or domain, *or* interfere with the public administration; *or* if the effect of the judgment would be to restrain the Government from acting, or to compel it to act.") (emphasis added) (internal quotation marks and citations omitted); *Dugan*, 372 U.S. at 620 ("The general rule is that a suit is against the sovereign if the judgment sought would expend itself on the public treasury or domain, *or* interfere with the public administration, *or* if the effect of the judgment would be to restrain the Government from acting, or to compel it to act.") (emphasis added) (internal quotation marks and citations omitted); *Palomar Pomerado Health Sys. v. Belshe*, 180 F.3d 1104, 1108 (9th Cir. 1999) (same) (quoting *Dugan*, 372 U.S. at 620); *Shermoen*, 982 F.2d at 1320 (same) (quoting *Dugan*, 372 U.S. at 620).

In holding that tribal sovereign immunity bars this suit, the district court relied on the test's second component—which asks whether "the judgment sought would . . . interfere with the public administration"—reasoning that "adjudicating this dispute would require the court to interfere with the tribe's internal governance." I agree with my colleagues that, under the circumstances of this case, a retrospective monetary judgment against the named defendants, based wholly on liability for their past conduct, would not interfere with the Tribe's administration of its own affairs.

That said, I cannot endorse the majority opinion's suggestion that "tribal sovereign immunity does not apply"

because "[a]ny relief ordered by the district court will not require Blue Lake to do or pay anything."  Slip op. at 16; *see also* slip op. at 21 ("[B]ecause plaintiffs' suit for damages against tribal employees and agents 'will not require action by the sovereign or disturb the sovereign's property,' and any 'judgment will not operate against the Tribe,' tribal sovereign immunity does not apply.").  That rationale pays heed to the first ("the judgment sought would expend itself on the public treasury or domain") and third ("the effect of the judgment would be to restrain the [tribe] from acting, or to compel it to act") components of the sovereign immunity test, but it leaves no room for independent operation of the second ("where the judgment sought would . . . interfere with the public administration").  Diminishing or excising the second component in that way cannot be reconciled with the Supreme Court's (and our) articulation of the test in a disjunctive manner, with three separate and independent grounds for sovereign immunity.  Nor can it be reconciled with precedents resting sovereign immunity solely on the ground that the suit could interfere with a sovereign's public administration.  *See Palomar Pomerado*, 180 F.3d at 1108 (holding that sovereign immunity barred the suit because "[t]he result [the plaintiff] seeks would 'interfere with the public administration'").  And if the second component of the test is diminished or excised for purposes of tribal sovereign immunity, it is as well in the federal and state sovereign immunity context.  *See Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978) ("Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers."); *Maxwell*, 708 F.3d at 1087-88 ("Tribal sovereign immunity

derives from the same common law immunity principles that shape state and federal sovereign immunity.").[1]

Although it is not necessary in this case to mark the precise boundaries of the "interfere with the public administration" component of the sovereign immunity test, nor is there any need to effectively suggest that the component is a dead letter. With these observations, I join the judgment and all but the above-referenced aspect of the majority opinion.

---

[1] The majority opinion's assertion that it neither diminishes nor excises the second component of the sovereign immunity test is not persuasive. The majority states that it has applied the second component "according to its terms, which asks whether 'the judgment sought would . . . interfere with the public administration' of the tribe." Slip op. at 19 n.3. But, as noted, the majority elsewhere states that sovereign immunity does not apply because the judgment sought would not require Blue Lake "to do or pay anything." Slip op. at 16. "[P]ay anything" corresponds with the first component of the test ("expend itself on the public treasury or domain"), while "do . . . anything" corresponds with the third ("restrain the [tribe] from acting, or to compel it to act"). The sovereign immunity test's inclusion of the second component as a separate ground for immunity must mean that there are at least some circumstances in which immunity applies where the judgment sought would "interfere with the public administration" in a manner not requiring the tribe (or federal government or State) to do or pay anything.