[No. 66969-9-I.   Division One.   September 12, 2011.]

CHRIS YOUNG, *Individually and as Personal Representative, Appellant*, v. JOE DUENAS, *as Chief of Tribal Police*, ET AL., *Defendants*, JOSEPH S. FITZPATRICK ET AL., *Respondents*.

*O. Yale Lewis III* (of *Law Offices of O. Yale Lewis III*), for appellant.

*Ann C. McCormick* (of *Forsberg & Umlauf PS*), for respondents.

¶1 APPELWICK, J. — Chris Young appeals the trial court's CR 12(b)(1) dismissal of his claims for lack of subject matter jurisdiction. He argues that the defendant tribal police officers present at the time of his brother's death are not protected by the Puyallup Tribe's sovereign immunity and that the state should have subject matter jurisdiction over the case. Because the officers acted in their official capacity and within the scope of the tribe's authority, the trial court properly dismissed based on sovereign immunity. We affirm.

## FACTS

¶2 The Puyallup Tribe is a federally recognized sovereign tribe. The Tribal Health Authority operated an inpatient drug and treatment center, located on trust land on the Puyallup reservation. On May 12, 2007, Jeffry Young arrived at the treatment center and posed as a medical doctor, attempting to gain access and to see patients. He acted in a bizarre and irrational manner. The residential attendant, Wade Iverson, denied Jeffry Young access to the facility. When Jeffry Young refused to leave the premises, Iverson called a security officer, Benjamin Isadore, for assistance. Jeffry Young again refused to leave the premises. Isadore, fearing for Jeffry Young's safety and the safety of the patients, called the Puyallup Tribal Police for assistance.

¶3 Officer John Scrivner was first to arrive, followed by Officers Joseph Fitzpatrick and Christopher Dausch. Isadore indicated to the officers with a hand symbol that he believed Jeffry Young to be mentally ill. Jeffry Young contin-

ued to act erratically, refusing to leave or comply with instructions. The officers made the decision to detain him. Jeffry Young resisted and struggled. Officers brought him to the ground, stunning him with a stun gun so that they could apply restraints. Shortly afterwards, officers noticed Jeffry Young was not breathing. They checked his pulse and determined that he had died. The Pierce County Medical Examiner concluded that the cause of death was excited delirium syndrome. His death was classified as accidental.

¶4 Chris Young first brought his suit in Puyallup Tribal Court in April 2009, pursuant to the Puyallup tribal tort claims act, chapter 4.12 Puyallup Tribal Codes. That complaint named the Puyallup Tribe and the individual police officers and sought monetary damages, alleging several causes of action such as negligence and wrongful death. In January 2010, Young voluntarily moved to dismiss the suit from tribal court, and the court granted the motion.

¶5 On February 9, 2010, Young filed this action instead, in Pierce County Superior Court. He removed the tribe as a defendant and instead named the three responding police officers; the chief of Tribal Police, Joe Duenas; and the security officer, Isadore. The complaint sought monetary damages based on the following claims: (1) excessive force, (2) loss of consortium, (3) violation of civil rights (Constitution), (4) violation of civil rights (42 U.S.C. § 1983), (5) attorney fees and expert witness fees, (6) wrongful death, and (7) negligent hiring/retention/training. The defendants filed motions to dismiss under CR 12(b) for lack of subject matter jurisdiction. The trial court conducted a hearing and granted the motions to dismiss. Young filed a motion for reconsideration. The trial court again conducted a hearing and denied the motion for reconsideration.

¶6 Young timely appealed. On appeal, Young stipulated to the dismissal of Duenas and Isadore and to the dismissal of the negligent hiring/retention/training claim. We granted

that motion, subject to the requirement that Young pay associated fees incurred. Thus, the only remaining named defendants on appeal are the three responding police officers, Fitzpatrick, Dausch, and Scrivner.

## DISCUSSION

¶7 The existence of subject matter jurisdiction over a party asserting tribal sovereign immunity is a question of law, which we review de novo. *Foxworthy v. Puyallup Tribe of Indians Ass'n*, 141 Wn. App. 221, 225, 169 P.3d 53 (2007), *review granted*, 164 Wn.2d 1019, 195 P.3d 89 (2008).

### I. Dismissal For Lack of Subject Matter Jurisdiction Based on Sovereign Immunity

¶8 An Indian tribe has the undisputed authority to " 'employ police officers to aid in the enforcement of tribal law and in the exercise of tribal power.' " *State v. Schmuck*, 121 Wn.2d 373, 382, 850 P.2d 1332 (1993) (quoting *Ortiz-Barraza v. United States*, 512 F.2d 1176, 1179 (9th Cir. 1975)). Tribal police officers have the authority as employees of the tribe to briefly detain both Indians and non-Indians on the reservation until the status of the trespasser can be determined. *Id.* at 382-83. *Schmuck* also reaffirmed tribes' rights to exclude persons from tribal lands and to detain alleged criminal offenders and turn them over to government officials for prosecution. *Id.* at 386-87 (citing *Oliphant v. Suquamish Indian Tribe*, 435 U.S. 191, 98 S. Ct. 1011, 55 L. Ed. 2d 209 (1978) and *Duro v. Reina*, 495 U.S. 676, 110 S. Ct. 2053, 109 L. Ed. 2d 693 (1990)). " 'The tribes also possess their traditional and undisputed power to exclude persons whom they deem to be undesirable from tribal lands. . . . Tribal law enforcement authorities have the power to restrain those who disturb public order on the reservation, and if necessary, to eject them.' " *Id.* at 387 (alteration in original) (quoting *Duro*, 495 U.S. at 696-97).

¶9 Under federal law, tribal sovereign immunity comprehensively protects recognized American Indian tribes

from suit absent explicit and unequivocal waiver or abrogation by congress. *Wright v. Colville Tribal Enter. Corp.*, 159 Wn.2d 108, 112, 147 P.3d 1275 (2006); *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 59, 98 S. Ct. 1670, 56 L. Ed. 2d 106 (1978). This protects tribes from suit involving both governmental and commercial activities, whether those actions are conducted on or off of a reservation. *Wright*, 159 Wn.2d at 112 (citing *Kiowa Tribe of Okla. v. Mfg. Techs., Inc.*, 523 U.S. 751, 754-55, 118 S. Ct. 1700, 140 L. Ed. 2d 981 (1998)).

¶10 Young concedes that the tribe has sovereign immunity, but argues first that the three named police officers should be held personally liable for their conduct under a theory of agency. He sued the officers both "in their individual capacity and in their official capacity as agents/ employees of the Tribe." But, the record shows that the tribal police, the Bureau of Indian Affairs, and the Pierce County Prosecutor's Office all found that the officers were carrying out their duties in a lawful and proper way. No evidence directly contradicts this conclusion or suggests they acted in their individual capacity. Sovereign immunity extends not only to the tribe itself, but also to tribal officers and tribal employees, as long as their alleged misconduct arises while they are acting in their official capacity and within the scope of their authority. *Wright*, 159 Wn.2d at 116; *Cook v. AVI Casino Enters., Inc.*, 548 F.3d 718, 726-27 (9th Cir. 2008), *cert. denied*, 129 S. Ct. 2159, 173 L. Ed. 2d 1156 (2009).

> The principles that motivate the immunizing of tribal officials from suit—protecting an Indian tribe's treasury and preventing a plaintiff from bypassing tribal immunity merely by naming a tribal official—apply just as much to tribal employees when they are sued in their official capacity. . . . Plaintiffs . . . cannot circumvent tribal immunity through "a mere pleading device."

*Cook*, 548 F.3d at 727 (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989)).

¶11 Young relies on the fact of death to establish an inference that the officers acted outside the scope of their authority. But, even if the fact of death established a prima facie case of misconduct outside the scope of authority, the misconduct of the tribal officer in discharge of his official duty still falls within the scope of tribal immunity. The Ninth Circuit Court of Appeals considered a similar issue arising from a non-Indian's claim against a tribal police officer. *Linneen v. Gila River Indian Cmty.*, 276 F.3d 489, 491 (9th Cir. 2002). The plaintiffs in that case alleged the officer, while on tribal property, unlawfully detained them, held them in custody for three hours, and threatened them. *Id.* The court concluded that "the suit arises from defendant['s] alleged misconduct during his *official duties* as a tribal ranger on the Community's land. Congress has not abrogated tribal sovereign immunity for such acts committed on tribal land by a tribal officer." *Id.* at 492 (emphasis added). Here, the exact same reasoning applies. Officers Fitzpatrick, Dausch, and Scrivner were tribal employees, acting in their official capacity, for the protection and benefit of the tribe. The fact that Young died before being surrendered to nontribal authorities does not affect the immunity of the tribe or the officers.

¶12 Young argues that United States Supreme Court case law supports his assertion that a state court should have subject matter jurisdiction over this case. He relies principally on *Montana v. United States*, and its general rule that an Indian tribe does not have the sovereign power to regulate non-Indians within the boundaries of the reservation. 450 U.S. 544, 564-65, 101 S. Ct. 1245, 67 L. Ed. 2d 493 (1981). But, Young's reliance on *Montana* is misplaced. First, as discussed above, the tribe, and thus the officers, had the authority to detain Jeffry Young, a non-Indian. *Schmuck*, 121 Wn.2d at 382-83. And, second, here it is not

the Puyallup tribe attempting to assert any regulatory authority over a nonmember, but instead it is Young, a nonmember, attempting to sue the tribe in a civil suit in state court. The parties dispute the applicability both of *Montana* generally and of its two exceptions for when a tribe may exercise authority over nonmembers.[1] But, we decline to address these arguments. *Montana* is inapplicable here and does not support Young's argument that state courts have jurisdiction over his case.

■■■ ¶13 The sovereign right of self-governance requires " 'an accommodation between the interests of the Tribes and the Federal Government, on the one hand, and those of the State, on the other.' " *Nevada v. Hicks*, 533 U.S. 353, 362, 121 S. Ct. 2304, 150 L. Ed. 2d 398 (2001) (quoting *Washington v. Confederated Tribes of Colville Indian Reservation*, 447 U.S. 134, 156, 100 S. Ct. 2069, 65 L. Ed. 2d 10 (1980)). Young argues that Washington courts should have subject matter jurisdiction based on Washington's strong interest in regulating the conduct of its peace officers. He cites to *Hicks* and asserts that states have jurisdiction over tribes when state interests outside the reservation are implicated. But, the Puyallup Tribe has an opposing interest in self-governance. And, the state interest involved in *Hicks* was much more substantial than that involved here. In *Hicks*, the plaintiff was a tribal member suing state law enforcement officers in tribal court under 42 U.S.C. § 1983, based on their execution of state search warrants relating to off-reservation crimes. *Hicks*, at 356-57. The situation here, with a non-Indian plaintiff and with tribal police officers acting solely in their capacity as tribal officers, is very different and does not implicate state interests in the same way.

---

[1] The first *Montana* exception arises when a non-Indian enters into a consensual relationship with a tribe, such as an employment or contractual relationship. 450 U.S. at 565-66. The second exception protects a tribe's "inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe." *Id.* at 566.

¶14 Young next argues that the 1854 Treaty of Medicine Creek constituted a limited but express Congressional abrogation of the Puyallup Tribe's sovereign immunity. 10 Stat. 1132 (1854). He argues that under the treaty, the Puyallup Indians shall not "shelter or conceal offenders against the laws of the United States, but . . . deliver them up to the authorities for trial." 10 Stat. 1132, 1134, art. 8 (1854). Young's argument is unpersuasive. The treaty is inapplicable on its face. The tribe is not concealing any offenders accused of violating United States law. Additionally, waiver of tribal sovereign immunity must be explicit and unequivocal. *Santa Clara Pueblo*, 436 U.S. at 59. The language of the treaty does not constitute such an explicit or unequivocal abrogation of sovereign immunity here. Young also expressly conceded to the Puyallup Tribe's sovereign immunity in his brief.

## II. Public Law 280 and RCW 37.12.010

¶15 Young argues that the superior court had subject matter jurisdiction over this matter under Public Law 280. Congress enacted Public Law 280 in 1953. Pub. L. No. 83-280, 67 Stat. 588 (1953) (codified at 18 U.S.C. § 1162; 25 U.S.C. §§ 1321-1326; 28 U.S.C. § 1360). Public Law 280 gave states the power to exercise jurisdiction over Indians for civil actions and criminal offenses committed on Indian reservations without the consent of the Indian tribe. Pub. L. 280, § 6; *In re Estate of Cross*, 126 Wn.2d 43, 47, 891 P.2d 26 (1995). Pursuant to Public Law 280, Washington State extended full criminal and civil concurrent jurisdiction to all fee lands in every Indian reservation and to trust and allotted lands therein when non-Indians were involved.[2]

---

[2] The statute states:

> The state of Washington hereby obligates and binds itself to assume criminal and civil jurisdiction over Indians and Indian territory, reservations, country, and lands within this state in accordance with the consent of the United States given by the act of August 15, 1953 (Public Law 280, 83rd Congress, 1st Session), but such assumption of jurisdiction shall not apply to Indians when on their tribal lands or allotted lands within an established Indian reservation

RCW 37.12.010; Laws of 1963, ch. 36, § 1; *Washington v. Confederated Bands & Tribes of Yakima Indian Nation*, 439 U.S. 463, 475, 99 S. Ct. 740, 58 L. Ed. 2d 740 (1979).

¶16 Young argues that Public Law 280 confers jurisdiction over Young's claims because they involve a dispute between nonmembers. But, this argument is unpersuasive for the same reasons articulated above. Public Law 280 and RCW 37.12.010 do not confer subject matter jurisdiction where subject matter jurisdiction is already precluded by sovereign immunity. If the officers in this case were acting in their individual and private capacities as nonmembers, RCW 37.12.010 could confer subject matter jurisdiction on the state, based on the officers' interaction with Young, also a nonmember. But, the officers were acting in their official capacity as tribal employees, within the scope of the tribe's authority. *Schmuck*, 121 Wn.2d at 382. RCW 37.12.010 and Public Law 280 do not extend the State's jurisdiction to sovereign tribal governments, their entities, or their employees. *Wright*, 159 Wn.2d at 116. We reject Young's argument and hold that RCW 37.12.010 does not confer jurisdiction on the State.

## III. Young's 42 U.S.C. § 1983 Claim

¶17 Young next addresses his constitutional claims arising under 42 U.S.C. § 1983. The trial court's decision to

---

and held in trust by the United States or subject to a restriction against alienation imposed by the United States, unless the provisions of RCW 37.12.021 have been invoked, except for the following:

(1) Compulsory school attendance;
(2) Public assistance;
(3) Domestic relations;
(4) Mental illness;
(5) Juvenile delinquency;
(6) Adoption proceedings;
(7) Dependent children; and
(8) Operation of motor vehicles upon the public streets, alleys, roads and highways: PROVIDED FURTHER, That Indian tribes that petitioned for, were granted and became subject to state jurisdiction pursuant to this chapter on or before March 13, 1963 shall remain subject to state civil and criminal jurisdiction as if *chapter 36, Laws of 1963 had not been enacted.

RCW 37.12.010; Laws of 1963, ch. 36, § 1.

grant dismissal on this claim was presumably not based on a lack of subject matter jurisdiction in the same way that it was for the tort claims. Instead, as respondent Isadore argues, this claim was dismissed because the complaint failed to allege or prove the essential elements of a 42 U.S.C. § 1983 claim.[3]

¶18 In order to prevail on his 42 U.S.C. § 1983 claim, a plaintiff must demonstrate two essential elements: (1) that defendant's conduct deprived plaintiff of a constitutionally protected right, and (2) that the deprivation was the result of state action. *See, e.g., Sintra, Inc. v. City of Seattle*, 119 Wn.2d 1, 11-12, 829 P.2d 765 (1992). Young has failed to satisfy either of these elements.

¶19 First, Young argues that the three police officers were state actors. He relies on *Bressi v. Ford*, 575 F.3d 891, 893 (9th Cir. 2009), a case where tribal police officers set up a roadblock on a state highway that ran through an Indian reservation. A nonmember alleged that the officers violated his constitutional rights by detaining him for four hours without probable cause. *Id.* at 894. The roadblock, the arrest of non-Indians, and the issuance of citations for violation of state law, were all done under the color of state law. *Id.* at 897. The officers in that case conceded that they were acting under color of state law, based on their certification as Arizona Peace Officers. *Id.* at 895. Accordingly, the officers were obliged to follow constitutional safeguards and were subject to a 42 U.S.C. § 1983 claim if they failed to do so. *Bressi*, 575 F.3d at 897. But, *Bressi* is plainly distinguishable from the facts here. The three police officers in this case were not enforcing state law on a state highway, but were enforcing tribal law on tribal lands. And, their authority under tribal law to detain

---

[3] Young argues that Washington state courts have jurisdiction to hear his case because tribal courts lack jurisdiction over matters of federal law, including, specifically, civil rights claims. As an initial matter, this argument is based on a flawed premise. Young contends that where a tribal court lacks jurisdiction to hear a claim, State jurisdiction must automatically arise, be he fails to provide support for this assertion.

a non-Indian trespasser on tribal lands is well established. *See, e.g., Schmuck*, 121 Wn.2d at 387-88.

¶20 Young's complaint asserted that the officers took state action based on the fact that they are commissioned peace officers pursuant to Washington's tribal police officer certification statute, RCW 43.101.157. RCW 43.101.157(1) provides:

> Tribal governments may voluntarily request certification for their police officers. Tribal governments requesting certification for their police officers must enter into a written agreement with the commission. The agreement must require the tribal law enforcement agency and its officers to comply with all of the requirements for granting, denying, and revoking certification as those requirements are applied to peace officers certified under this chapter and the rules of the commission.

¶21 Young provides evidence that the three officers attended academy classes and were certified through the Washington State Criminal Justice Training Commission. But, while RCW 43.101.157(1) provides a mechanism for tribal officers to gain state certification, the mere fact that the officers took certification classes does not establish that they were conducting state action when they detained Jeffry Young. The more relevant analysis is the actual function of the action taken by the officers and whether that action was an exercise of either tribal or state authority. The *Bressi* court, in analyzing the nature of the officers' action in setting up the roadblock, stated:

> These actions established, beyond any dispute of fact, that the roadblock functioned not merely as a tribal exercise, but also as an instrument for the enforcement of state law. We emphasize function, rather than intent, because function is a more readily ascertainable guide to conduct and furnishes a more practical rule for determining whether a roadblock is operated (at least in part) under color of state law.

*Bressi*, 575 F.3d at 897. Here, the officers were acting under their tribal authority, fulfilling their professional duties.

There are no facts demonstrating that they acted jointly with, or under authority of any agency of Washington State government, nor were they enforcing Washington State laws. We hold that the officers' action did not constitute state action, and thus, that Young has not supported his 42 U.S.C. § 1983 claim.

¶22 Young also fails to satisfy the other element of a 42 U.S.C. § 1983 claim, that the officers' conduct deprived him of a constitutionally protected right. *Sintra*, 119 Wn.2d at 11-12. This is because the United States Constitution constrains the federal and state governments, but it does not generally apply in the same way to Indian tribes.

> As separate sovereigns pre-existing the Constitution, tribes have historically been regarded as unconstrained by those constitutional provisions framed specifically as limitations on federal or state authority. Thus in *Talton* v. *Mayes*, 163 U.S. 376[, 16 S. Ct. 986, 41 L. Ed. 196] (1896), [the United States Supreme] Court held that the Fifth Amendment did not "operat[e] upon" "the powers of local self-government enjoyed" by the tribes.

*Santa Clara Pueblo*, 436 U.S. at 56 (third alteration in original) (quoting *Talton*, 163 U.S. at 384). The Bill of Rights and the Fourteenth Amendment do not of their own force apply to Indian tribes. *Hicks*, 533 U.S. at 383. Instead, individual rights are protected against tribal government action based solely on express congressional action taken to limit, modify, or eliminate their powers of local self-government. *Santa Clara Pueblo*, 436 U.S. at 57-58. In this case, individual rights are protected by the Indian Civil Rights Act, 25 U.S.C. § 1302. But, actions taken by tribal employees under color of tribal law are beyond the reach of 42 U.S.C. § 1983. *Santa Clara Pueblo*, 436 U.S. at 56; *Evans v. McKay*, 869 F.2d 1341, 1347 (9th Cir. 1989). Because Young has failed to satisfy either element of his 42 U.S.C. § 1983 claim, the trial court correctly dismissed his claim.

IV. Attorney Fees

¶23 Young requests attorney fees based on RAP 18.1(a) and 42 U.S.C. § 1988(b). Because Young is not the prevailing party, he is not entitled to attorney fees on appeal.

¶24 We affirm.

LEACH, A.C.J., and SPEARMAN, J., concur.

Review denied at 173 Wn.2d 1020 (2012).