**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

FILED
10/19/2022
Court of Appeals
Division I
State of Washington

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| MARGRETTY RABANG and ROBERT RABANG, | No. 83456-8-I |
| Appellants, | DIVISION ONE |
| v. | ORDER GRANTING MOTION TO PUBLISH |
| RORY GILLILAND, MICHAEL ASHBY, ANDY GARCIA, RAYMOND DODGE, and JOHN DOES 1-10, | |
| Respondents. | |

Respondents Rory Gilliland, Michael Ashby and Andy Garcia moved for publication of the opinion filed on August 15, 2022. Appellants Margretty Rabang and Robert Rabang have filed an answer. A panel of the court has reconsidered its prior determination not to publish the opinion for the above entitled matter filed on August 15, 2022, and has found that it is of precedential value and should be published.

Now, therefore it is hereby

ORDERED that the written opinion, filed on August 15, 2022, shall be published and printed in the Washington Appellate Reports.

For the Court:

_Smith, a.C.g._
Judge

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| MARGRETTY RABANG and ROBERT RABANG, | No. 83456-8-I |
| Appellants, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| RORY GILLILAND, MICHAEL ASHBY, ANDY GARCIA, RAYMOND DODGE, and JOHN DOES 1-10, | |
| Respondents. | |

SMITH, A.C.J. — The inherent authority of Native tribes and nations to govern themselves is recognized by the federal government, protected by the United States Constitution and treaties, and has been upheld by the United States Supreme Court. In 2016, the Nooksack tribe sought to evict Margretty and Robert Rabang[1] from their house on trust land situated outside the Nooksack Indian Reservation. The Rabangs sued, claiming intentional and negligent infliction of emotional distress stemming from the legal process leading up to the issuance of the eviction order and the attempted execution of the eviction. The trial court dismissed the case for lack of subject matter jurisdiction. The trial court also denied the Rabangs' motion for reconsideration, concluding that RCW 37.12.060 separately precluded subject matter jurisdiction. Because

---

[1] Because the Rabangs share a last name, we refer to them by their first names to provide clarity.

Citations and pin cites are based on the Westlaw online version of the cited material.

sovereign immunity denies state court jurisdiction, we affirm the decisions of the trial court.

FACTS

Margretty and Robert Rabang have resided in Deming, Washington, for over twenty years.[2]  The property is located on Nooksack trust lands outside the Nooksack Indian Reservation.  The Rabangs participated in a lease-to-own program under the U.S. Department of Housing and Urban Development's (HUD) Mutual Help Occupancy Program (MHOP), which is administered by the Nooksack Indian Housing Authority (NIHA).  As part of that program, they began making payments toward the purchase of the house in 2006.  The Rabangs have been enrolled members of the Nooksack Tribe since 1984.

In June 2016, the Tribal Council disenrolled Margretty from the tribe.  On August 19, the NIHA notified Margretty that it would be terminating her lease-to-own program participation, effective September 2016, due to that disenrollment.  Nooksack Tribal Officer Lynda Seixas served the notice on Margretty that same day.  On October 3, by direction of Nooksack Tribal Police Chief Rory Gilliland, Officer Devin Cooper served a notice to vacate on the Rabangs at their residence.  The Rabangs filed a complaint on October 11 with the Nooksack Tribal Court seeking a declaratory judgment, which was "rejected" by the Tribal Court on the same day.[3]

_____

[2] This and many of the facts in this section are taken from the Rabangs' complaint.  When reviewing the grant of a motion to dismiss for lack of jurisdiction, we accept the non-moving party's factual allegations as true.  See State v. LG Elecs., Inc., 185 Wn. App. 394, 405, 341 P.3d 346 (2015).

[3] The term "rejection" in this context is unclear because the rejection itself

2

No. 83456-8-I/3

In March, after the removal of Nooksack Tribal Court Chief Judge Susan Alexander, the Tribal Council appointed tribal attorney Raymond Dodge as the Chief Judge. In November, the NIHA filed a complaint for an unlawful detainer against the Rabangs. The Tribal Court, under the direction of Judge Dodge, then rejected the Rabangs' counsel's appearance notice and Margretty's attempted pro se responsive pleading. On December 5, Judge Dodge refused to delay the Rabangs' trial to allow Margretty to retain new counsel after members of the Nooksack Tribal Police Department, Chief Gilliland and Lieutenant Ashby denied their attorneys access to the courthouse.

On December 14, Judge Dodge entered an eviction order against the Rabangs. Nooksack Police Chief Gilliland and Lieutenant Ashby were directed to evict the Rabangs from the house by December 28.

On December 19, Andrew Garcia, a building inspector for the tribe, and an unidentified officer attempted to inspect the house. Robert confronted them and denied the two men access to the house.[4] Three days later, Judge Dodge issued an "Order Following Show Cause Hearing", which amended the eviction order and directed Gilliland and Ashby to forcibly evict the Rabangs from the house.

The Rabangs brought this lawsuit in Whatcom County Superior Court, claiming the torts of intentional infliction of emotional distress and negligent

is not included in the record.

[4] Garcia, in a declaration submitted during the course of litigation, represents that he alone approached the residence but that he noticed a Nooksack Patrol Officer in the area when leaving. Because of the posture of the motion to dismiss, we disregard this minor dispute of fact.

3

infliction of emotional distress. Judge Dodge, Ashby and Gilliland, Garcia, and various John Does were named as defendants. The case was stayed pending the resolution of the federal case, Rabang v. Kelly, another attempt by the Rabangs to challenge their disenrollment and attempted eviction. On appeal from the district court's dismissal, the Ninth Circuit affirmed, holding that it was up to the Nooksack Tribe to resolve the claims because addressing the underlying evictions would require intervening in tribal member disputes. Rabang v. Kelly, 328 F. Supp. 3d 1164, 1168 (9th Cir. 2018).

After the federal court ruling in June 2021, the tribal defendants in this case moved to dismiss and the trial court dismissed the case without prejudice. It held that the court lacked subject matter jurisdiction because the Rabangs' tort claims stemmed "directly from the Nooksack Tribal Court's issuance of an eviction order and the Tribal Police's execution of the same."

The Rabangs moved for reconsideration, contending that the court's reasoning rests on errors of law and fails to achieve substantial justice. The trial court denied the motion, holding that the court lacked jurisdiction over the Rabang's tort claims because the claims:

> originate from and depend upon (1) the plaintiff's right to continued residency in Tribal housing located on Tribal trust land, and (2) the propriety of the Tribe's manner of eviction.
>
> In adjudicating these claims, a state court would necessarily pass judgment on the Plaintiff's right to possession of real property belonging to the Nooksack Indian Tribe and held in trust by the United States. Such jurisdiction is flatly prohibited by RCW 37.12.060. It is for the Nooksack Tribe, not this Court, to resolve these claims.

RCW 37.12.060 had not previously been briefed by the parties.

4

No. 83456-8-I/5

The Rabangs appealed.

ANALYSIS

The Rabangs contend that the trial court erred in dismissing the case and in denying their motion for reconsideration. Gilliland, Ashby, Dodge, and John Does 1-10 (collectively "Gilliland") contend that the dismissal and denial were valid because of judicial immunity, sovereign immunity, and the applicability of RCW 37.12.060. We conclude that sovereign immunity precludes subject matter jurisdiction.

Subject matter jurisdiction is a question of law reviewed de novo. Outsource Servs. Mgmt., LLC v. Nooksack Business Corp., 181 Wn.2d 272, 276, 333 P.3d 380 (2014). "Washington State courts generally have jurisdiction over civil disputes in Indian country if either (1) the State has assumed jurisdiction pursuant to Public Law 280[5] or (2) asserting jurisdiction would not infringe on the rights of the tribe to make its own laws and be ruled by them." Outsource Servs. Mgmt., 181 Wn.2d at 276-277.

Public Law 280 was enacted by Congress in 1953 to permit "states to assume jurisdiction over Indian country." State v. Cooper, 130 Wn.2d 770, 773, 928 P.2d 406 (1996). "Public Law 280 gave five states criminal jurisdiction over all Indian country with the exception of three reservations." Cooper, 130 Wn.2d at 773. It "gave the remaining states, including Washington, the consent of the United States to assume jurisdiction over Indian country by statute and/or amendment of their state constitutions." Id.

---

[5] Pub.L. No. 83–280, § 7, 67 Stat. 588, 590 (1953).

5

In 1962, pursuant to Public Law 280, Washington adopted RCW 37.12.010, which established that:

> The State of Washington hereby obligates and binds itself to assume criminal and civil jurisdiction over Indians, and Indian territory, reservations, country, and lands within this state in accordance with [Public Law 280], but such assumption of jurisdiction shall not apply to Indians when on their tribal lands or allotted lands within an established Indian reservation and held in trust by the United States or subject to a restriction against alienation imposed by the United States, unless the provisions of RCW 37.12.021 have been invoked, except for the following:
>
> (1) Compulsory school attendance;
>
> (2) Public assistance;
>
> (3) Domestic relations;
>
> (4) Mental illness;
>
> (5) Juvenile delinquency;
>
> (6) Adoption proceedings;
>
> (7) Dependent children; and
>
> (8) Operation of motor vehicles upon the public streets, alleys, roads and highways.

Through this statute, "Washington assumed full nonconsensual civil and criminal jurisdiction over all Indian country outside established Indian reservations." Cooper, 130 Wn.2d at 775-776.

"Allotted or trust lands are not excluded from full nonconsensual state jurisdiction unless they are 'within an established Indian reservation'." Id. at 776 (quoting RCW 37.12.010). Therefore, "Nooksack consent is not necessary for the continuing exercise of state jurisdiction over trust lands outside the boundaries of the Nooksack Reservation." Id. at 781.

The parties here agree that the property in this case is located on allotted land outside the established Nooksack Indian Reservation. RCW 37.12.010

6

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

exempts from state jurisdiction only matters occurring on reservation land. Since the events giving rise to the present case occurred off-reservation, we conclude that RCW 37.12.010 permits exercise of state jurisdiction absent some other applicable restriction.

<u>RCW 37.12.060 does not preclude state jurisdiction</u>

RCW 37.12.010 is not the only provision bearing upon considerations of state court jurisdiction in this case. The Rabangs assert that the trial court wrongly denied their motion for reconsideration when it held that RCW 37.12.060 precludes state court jurisdiction over the claims of this case. We conclude that the trial court incorrectly applied RCW 37.12.060, but nonetheless its conclusion was correct for reasons addressed below.

RCW 37.12.060 states that:

> Nothing in this chapter . . . shall confer jurisdiction upon the state to adjudicate, in probate proceedings or otherwise, the ownership or right to possession of such property [belonging to any Indian tribe that is held in trust by the United States] or any interest therein.

The Rabangs claim that RCW 37.12.060 does not apply to the claims of intentional infliction of emotional distress and negligent infliction of emotional distress. We agree.

Although the cause of the Rabangs' tort claims is the 2016 eviction proceeding and attempted eviction, the Rabangs are not requesting that the court adjudicate "ownership or right to possession" over the house at issue in this lawsuit. Instead, they are requesting that the court acknowledge that the conduct was "outrageous" enough to support their tort claims.

7

If the court were being asked to make a legal determination about property ownership or rights, RCW 37.12.060 would preclude jurisdiction. Gilliland contend that RCW 37.12.060 applies because the Rabangs' "allegations all source back to [their] alleged right to continue to occupy Tribal Property." But the Rabangs do not request relief affecting ownership or property rights. While the Rabangs' tortious claims do stem from the eviction proceedings, the merit of their claims is not dependent on the court assessing the validity of the tribe's eviction or property ownership proceedings.

The Rabangs have urged this court to take judicial notice of the property lease entered into by the Rabangs under the lease-to-own program. They assert that "[t]aking judicial notice of the Lease will aid this Court in determining whether the trial court properly applied RCW 37.12.060." However, because we agree with the Rabangs that RCW 37.12.060 does not apply, consideration of that document is unnecessary.

Though we conclude that the court's analysis here was incorrect, its ultimate conclusion—that it did not have subject matter jurisdiction over the dispute—was in fact correct.

### Sovereign immunity applies

"Under federal law, tribal sovereign immunity comprehensively protects recognized American Indian tribes from suit absent explicit and unequivocal waiver or abrogation by congress." Young v. Duenas, 164 Wn. App. 343, 348-349, 262 P.2d 527 (2011). "Sovereign immunity extends not only to the tribe itself, but also to tribal officers and tribal employees, as long as their alleged

misconduct arises while they are acting in their official capacity and within the scope of their authority." Young, 164 Wn. App. at 349.

The Nooksack Tribe is not being sued here, but employees and officials of the tribe are being sued. Dodge, Gilliland, Ashby, and John and Jane Does 1-10's acts (finalizing orders, serving documents, attempting to inspect the house, etc.) throughout the eviction process were performed within "their official capacity and within the scope of their authority." See Young, 164 Wn. App. at 349. Evidence submitted by the defendants—and not, as far as the record on appeal indicates, contested by the plaintiffs—establishes that the Nooksack Tribal Court and Nooksack Tribe Police Department have authority to issue eviction notices to tenants living in tribally-owned residences on trust land. The Rabangs instead contend that the State has assumed civil jurisdiction under Public Law 280. But, "RCW 37.12.010 and Public Law 280 do not extend the State's jurisdiction to sovereign tribal governments, their entities, or their employees." Young, 164 Wn. App. at 353.

The Rabangs contend that sovereign immunity "does not apply to these personal capacity claims against four non-members." But the court looks to the activity, not the pleaded defendant. Young, 164 Wn. App. at 349 (" 'Plaintiffs . . . cannot circumvent tribal immunity through a mere pleading device.' " (alteration in original) (internal quotation marks omitted) quoting Cook v. AVI Casino Enters., Inc., 548 F. 3d 718, 726-27 (9th Cir. 2008)). And here, the activities complained of—issuing and enforcing eviction orders—are squarely official in their scope.

9

No. 83456-8-I/10

In the context of Judge Dodge's argument about judicial immunity, the Rabangs contend that immunity did not apply because Judge Dodge was not properly appointed. At oral argument, the Rabangs expanded this claim by contending that the United States Department of Interior's (DOI) December 2016 letter "invalidated" all tribal decisions taken after March 24, 2016, and therefore that the DOI invalidated any authority possessed by Judge Dodge or the tribal police.[6] Because these arguments could also be made in the context of sovereign immunity—asserting that Judge Dodge and the tribal employees are not entitled to sovereign immunity because they were not acting in an official capacity—we address them here.

First, we cannot analyze the tribal process that was used to appoint Judge Dodge. "In general, Indian tribes possess inherent and exclusive power over matters of internal tribal governance." Rabang, 328 F. Supp. 3d at 1167. We cannot analyze if Judge Dodge was acting in his "official capacity" during the eviction proceeding without first considering whether he was appointed appropriately under Nooksack law. Determining whether a tribal official "had general authority to act on behalf of the tribe in a governmental capacity [is a] pure question[] of tribal law, beyond the purview of the federal agencies and the federal courts." Attorney's Process & Investigation Servs., Inc. v. Sac & Fox Tribe of Mississippi in Iowa, 609 F.3d 927, 943 (8th Cir. 2010). That other tribal officials—most notably the Nooksack Council and police departments—viewed

---

[6] Wash. Ct. of Appeals oral argument, Rabang v. Gilliland, No. 83456-8-I (July 19, 2022), 18 min., 35 sec., video recording by TVW, Washington State's Public Affairs Network, https://www.tvw.org/watch/?eventID=2022071054

10

Judge Dodge as acting under color of tribal law is as far as this court can or should inquire into the propriety of his appointment. State and federal courts have a long and shameful history of ignoring tribal sovereignty, and we will not add to that history today. See generally Oklahoma v. Castro-Huerta, ___ U.S. ___, 142 S. Ct., 2486, 2505-27, ___ L. Ed. 2d ___ (2022) (Gorsuch, J. dissenting) (summarizing history of American judicial interference in tribal affairs).

Second, the Rabangs' reliance on the DOI's December 2016 letter is misplaced. The DOI's 2016 letter stated that any actions taken by the tribal court after March 2016 were "not valid for purposes of Federal services and funding." In the letter, the DOI explained that evictions and other Nooksack government actions taken after March 2016 would not be recognized as lawful by the Department "pursuant to [their] government-to-government relationship." This language appears to relate only to the federal governments' provision of services to the Nooksack, it does not purport to invalidate relevant Nooksack actions for all purposes. Nor have the Rabangs demonstrated that the DOI even has such authority over the Nooksack Tribe, a sovereign entity. The Rabangs fail to provide evidence supporting their interpretation of the letter. The Department's decision to not recognize specific acts by the tribe should not be misinterpreted as a final ruling that "reverses" all preceding tribal actions. The DOI's letter does not have the effect of stripping Judge Dodge and the other tribal employees of their status as officials of the Nooksack tribe acting in their official capacity.

No. 83456-8-I/12

We therefore conclude that sovereign immunity precludes state court jurisdiction over these claims. We need not reach other arguments raised in the parties' briefs, including Judge Dodge's assertion of judicial immunity.

We affirm.

_Smith, A.C.J._

WE CONCUR:

_Coburn, J._ _Hazelrigg, J._