**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| ELIZABETH PITOITUA, Administratrix for the ESTATE OF HANA M. LETOI and Guardian for minors WESLEY TAVETE LETOI, SURESA SARAI LETOI and MELISSA PEPESINA LETOI, | No. 84359-1-I |
| | DIVISION ONE |
| Appellants, | PUBLISHED OPINION |
| v. | |
| CLARENCE GAUBE, ABIGAIL INGRAM, JONATHAN NORMAN, QUI NGUYEN, JAMES ARBUCKLE, JULIE CORLEY, TYLER JEFFERYS, CLIFFORD FEJERAN, JESSICA D'ARCIS, AUSTIN GUTHRIE, in each of their personal capacities, | |
| Respondents. | |

MANN, J. — Hana Letoi died after an altercation with her partner, Nomeneta Tauave, in the parking lot of the Tulalip Resort Casino (casino). Elizabeth Pitoitua, the administratix for Letoi's estate, sued multiple casino employees that were present that night for the negligent failure to intervene and protect Letoi. The trial court dismissed the complaint for lack of jurisdiction based on tribal sovereign immunity and the absence

No. 84359-1-I/2

of a legal duty. Pitoitua appeals and argues that (1) tribal sovereign immunity does not extend to tribal employees, (2) the defendants owed, and breached, a common law duty to Letoi, and (3) the employees breached their duty under the voluntary rescue doctrine. We agree with Pitoitua that the trial court erred in dismissing the case based on tribal sovereign immunity. But the trial court did not err in concluding that the employees did not owe a legal duty to Letoi. We therefore affirm.

I

On October 23, 2020, Letoi visited the casino with her partner Tauave. The casino is located on the federally charged municipality of Quil Ceda Village and owned by the Tulalip Tribes (Tribes).

After drinking a large amount of alcohol, Tauave became physically violent toward Letoi while inside the casino. Tauave forcefully grabbed Letoi's neck while they argued.[1] At about 6:41 p.m., Clifford Fejeran observed the altercation between Letoi and Tauave.[2] Fejeran reported the altercation to Tyler Jefferys and Qui Nguyen but they said that the situation had "been cleared." Nevertheless, security was informed by another casino employee that Tauave had not actually left the premises. Clarence Gaube and Jefferys saw Tauave but did not confront him or ask him to leave the casino.

Gaube and Jessica D'Arcis saw another altercation at about 7:45 p.m. Abigail Ingram contacted Letoi and Tauave at about 7:46 p.m. She did not try to physically

---

[1] Because this matter was decided on a CR 12(c) motion, our recitation of the facts is taken from the complaint and assumes all factual allegations are true. Trujillo v. Nw. Tr. Servs., Inc., 183 Wn.2d 820, 830, 355 P.3d 1100 (2015).
[2] All individuals, other than Letoi and Tauave, are casino employees that were working at the casino on October 23, 2020.

-2-

No. 84359-1-I/3

separate the couple despite the obvious threat to Letoi. Instead, Ingram allowed Letoi and Tauave to leave the casino together.

At some point Nguyen, James Arbuckle, and Julie Corley were notified of Tauave's assault of Letoi.

At about 7:48 p.m., Tauave yelled for Letoi to come with him to their vehicle. Letoi and Tauave entered the vehicle at about 7:50 p.m. Nguyen told Gaube and Jonathon Norman to follow the couple, but only from a distance. At about the same time Norman heard loud arguing from the parking lot. Gaube saw Tauave grab Letoi by the neck and lower area and shake her.

At 7:53 p.m., Tauave began to reverse the vehicle to leave the property after he saw Gaube watching the assault. Tauave then pushed Letoi out of the moving vehicle. Only then did Gaube call for police assistance.

Letoi died two days later from hypoxic ischemic encephalopathy, that is, strangulation.

Elizabeth Pitoitua, the administratrix of Letoi's estate, and guardian for Letoi's minor children, sued Gaube, Ingram, Norman, Nguyen, Arbuckle, Corley, Jefferys, Fejeran, D'Arcis, and Austin Guthrie (employees). The complaint alleged causes of action for negligence, negligent infliction of emotional distress, and loss of parental consortium. The complaint named each of the employee defendants in their "personal capacity only." For example, for Gaube, the complaint stated:

> Defendant Gaube is sued in his personal capacity only. The suit is brought against Defendant Gaube in his capacity as a tribal employee acting within the scope of his employment, and any judgment against him will not operate against the Tulalip Tribes. This is not a suit against Defendant Gaube in his official capacity. It is a suit against Defendant

No. 84359-1-I/4

> Gaube to recover for his personal actions, which will not require action by the Tulalip Tribe or disturb the Tribes' property.

The trial court granted the employees' motion for judgment on the pleadings under CR 12(c). The trial court found that (1) Pitoitua's allegations against the employees in their personal capacities failed because they owed no personal duty to Letoi as casino employees, even if the establishment itself owed her a duty and (2) the state court lacked subject matter jurisdiction because sovereign immunity barred the claims as the Tulalip Tribes were the real parties in interest, not the individual defendants.

Pitoitua appeals.

## II

We review a CR 12(c) dismissal de novo. Davidson v. Glenny, 14 Wn. App. 2d 370, 375, 470 P.3d 549 (2020). Like a CR 12(b)(6) motion, the purpose of a CR 12(c) motion is to "determine if a plaintiff can prove any set of facts that would justify relief." P.E. Sys., LLC v. CPI Corp., 176 Wn.2d 198, 203, 289 P.3d 638 (2012). On a CR 12(c) motion, "[f]actual allegations contained in the complaint are accepted as true." Silver v. Rudeen Mgmt. Co., Inc., 197 Wn.2d 535, 542, 484 P.3d 1251 (2021). When applying the CR 12 standard, we grant the plaintiff the benefit of all reasonable inferences from the factual allegations in the complaint, as well as hypothetical facts consistent with the complaint. Trujillo v. Nw. Tr. Servs., Inc., 183 Wn.2d 820, 830, 355 P.3d 1100 (2015).

Courts may dismiss under CR 12 for lack of subject matter jurisdiction. CR 12(b)(1). The existence of subject matter jurisdiction over a party asserting tribal sovereign immunity is a question of law that we review de novo. Young v. Duenas, 164 Wn. App. 343, 348, 262 P.3d 527 (2011).

-4-

No. 84359-1-I/5

A

Pitoitua first argues that the trial court erred in dismissing the action for lack of subject matter jurisdiction because tribal sovereign immunity does not apply when the claims were asserted against the employees acting in their personal capacity. We agree.

Tribal sovereign immunity arises under federal law. Young, 164 Wn. App. at 348-49. An Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity. Kiowa Tribe of Okla. v. Mfg. Techs., Inc., 523 U.S. 751, 754, 118 S. Ct. 1700, 140 L. Ed 2d (1998). "Sovereign immunity extends not only to the tribe itself, but also to tribal officers and tribal employees, as long as their alleged misconduct arises while they are acting in their official capacity and within the scope of their authority." Young, 164 Wn. App. at 349.

"Once a defendant requests dismissal under CR 12(b)(1) on the basis of sovereign immunity, the party asserting jurisdiction has the burden of proving the other party has no immunity or waived it." Long v. Snoqualmie Gaming Comm'n, 7 Wn. App. 2d 672, 679, 435 P.3d 339 (2019).

We follow Lewis v. Clarke, 581 U.S. 155, 137 S. Ct. 1285, 197 L. Ed. 2d 631 (2017), to determine whether sovereign immunity bars a suit against tribal employees. In Lewis, a tribal employee was sued after causing a car crash on an off-reservation state highway. 581 U.S. at 159-60. The Court rejected the sovereign immunity defense, holding that the lawsuit was not against the tribal employee in his official capacity, but instead "is simply a suit against Clarke to recover for his personal actions, which 'will not require action by the sovereign or disturb the sovereign's property.'"

-5-

No. 84359-1-I/6

Lewis, 581 U.S. at 163 (quoting Larson v. Domestic and Foreign Com. Corp., 337 U.S. 682, 687, 69 S. Ct. 1457, 93 L. Ed. 1628 (1949)).

The Supreme Court held that to determine whether an action is one of official or personal capacity, "courts should look to whether the sovereign is the real party in interest to determine whether sovereign immunity bars the suit." Lewis, 581 U.S. at 161-62. "In making this assessment, courts may not simply rely on the characterization of the parties in the complaint, but rather must determine in the first instance whether the remedy sought is truly against the sovereign." Lewis, 581 U.S. at 162.

The Ninth Circuit recently applied Lewis in Acres Bonusing v. Marston, 17 F.4th 901 (9th Cir. 2021), cert. denied, 142 S. Ct. 2836 (2022). In Acres Bonusing, Blue Lake Rancheria sued actors from a tribal court arising from a casino gaming system dispute. 17 F.4th at 905. Entities sued included the tribal court judge, his law clerks, the clerk of the tribal court, tribal officials, and outside law firms and lawyers that represented the tribe. Acres Bonusing, 17 F.4th at 905. The Ninth Circuit concluded that a tribal government is "not the real party in interest" when the suit expressly seeks "money damages from the defendants in their individual capacities." Acres Bonusing, 17 F.4th at 905. "Tribal sovereign immunity [will] not apply [where] the judgment will not operate against the Tribe." Acres Bonusing, 17 F.4th at 909. According to the court, "[t]he critical question is 'whether the remedy sought is truly against the sovereign.'" Acres Bonusing, 17 F.4th at 908 (citing Lewis, 581 U.S. at 162).

"Whether the remedy sought is one against the sovereign or the individual officer turns on '[t]he distinction between individual-and official-capacity suits.'" Acres Bonusing, 17 F.4th at 908 (alteration in original) (quoting Lewis, 581 U.S. at 162). An

-6-

No. 84359-1-I/7

official-capacity claim, although nominally against the official, "'in fact is against the official's office and thus the sovereign itself.'" Acres Bonusing, 17 F.4th at 908 (quoting Lewis, 581 U.S. at 162). In contrast, officials are sued in their personal capacity when the plaintiff "'seek[s] to impose individual liability upon a government officer for action taken under color of . . . law.'" Acres Bonusing, 17 F.4th at 909 (quoting Lewis, 581 U.S. at 162).

The Ninth Circuit held that tribal sovereign immunity did not bar this action for money damages against individual tribal employees and tribal agents in their personal capacities. Acres Bonusing, 17 F.4th at 908. In support, the court cited Lewis, stating, "[T]hat 'an employee was acting within the scope of his employment at the time the tort was committed is not, on its own, sufficient to bar a suit against that employee on the basis of tribal sovereign immunity.'" Acres Bonusing, 17 F.4th at 909 (quoting Lewis, 581 U.S. at 158).

Before Lewis, the Ninth Circuit analyzed tribal sovereign immunity in Pistor v. Garcia, 791 F.3d 1104 (9th Cir. 2015). Pistor is instructive here. In Pistor, the plaintiffs were gamblers who "won a significant amount of money" at the Mazatzal Hotel and Casino which is owned and operated by the Tonto Apache Tribe. Pistor, 791 F.3d at 1108. Following the win, the chief of the tribal police department, the general manager of the casino, and the tribal gaming office inspector handcuffed the plaintiffs and interrogated them. Pistor, 791 F.3d at 1108. The gamblers sued for damages under state tort law and 42 U.S.C. § 1983 for violating their Fourth and Fourteenth Amendment rights. Pistor, 791 F.3d at 1109. The Ninth Circuit held that tribal sovereign immunity did not bar the suit and reasoned that "any remedy will operate

against the officers individually, and not against the sovereign." Pistor, 791 F.3d at 1108.

An earlier Ninth Circuit decision, Maxwell v. County of San Diego, 708 F.3d 1075 (9th Cir. 2013), is also in line with Lewis and Pistor. In Maxwell, the Ninth Circuit determined that two tribal employees could not invoke tribal sovereign immunity in a damages suit against them for providing allegedly deficient medical care following a shooting incident. Maxwell, 708 F.3d at 1087. The court held that the tribal paramedics "do not enjoy tribal sovereign immunity because a remedy would operate against them, not the tribe." Maxwell, 708 F.3d at 1089.

Applying Lewis, its progeny, and its predecessors, we conclude that tribal sovereign immunity did not extend to the casino employees. As in Lewis, the employees were acting within the scope of employment while the alleged negligence occurred. Yet the employees were sued in their individual and personal capacity only. Any remedy would expressly operate against them, not the Tribes.

The employees argue that the case is distinguishable because the alleged negligence occurred on tribal land and the simultaneous suit in tribal court suggests an action against the Tribes, not employees. But the alleged conduct in Acres Bonusing and Pistor also occurred on tribal land. Acres Bonusing, 17 F.4th at 905; Pistor, 791 F.3d at 1108. And the plaintiffs in Acres Bonusing sued in tribal court in addition to federal court. Acres Bonusing, 17 F.4th at 905. Further, case law does not suggest that the presence of a suit in tribal court affects the analysis.

The employees rely on Genskow v. Prevost, 825 F. App'x 388 (7th Cir. 2020), an unpublished Seventh Circuit Court of Appeals decision. There, the case involved

No. 84359-1-I/9

alleged excessive force by tribal police officers removing an elder from a tribal meeting. Genskow, 825 F. App'x at 388. The Seventh Circuit affirmed that the real party of interest was the tribe, not the officers, meaning the case was barred by tribal immunity notwithstanding the individual capacity claim for excessive force. The court distinguished Lewis by concluding that the plaintiff was "seek[ing] to hold individual tribal officers liable for using excessive force while removing her from a meeting of the Nation's governing body on tribal land." Genskow, 825 F. App'x at 391.

Here, the employees argue that, like Genskow, this case is distinguishable from Lewis. They argue that, even though Pitoitua sued the employees in their personal capacity, the real case is against the tribal employees for their alleged negligence within the scope of their employment under the tribe on tribal land. And this case is more like Genskow, where the plaintiff brought her suit as a tribal member over tribal events that took place on tribal land. 825 F. App'x at 391.

But Genskow is distinguishable. Here, the employees were not engaging in tribal events and the alleged actions did not include the Tribes other than the Tribes' ownership of the establishment. Pitoitua expressly sued the employees in their personal capacity based on their alleged negligence while acting as security at a casino owned by a tribe. Any remedy would not operate against the Tribes, but the employees themselves.

We follow Acres Bonusing, and conclude that the trial court erred in dismissing Pitoitua's claims based on a lack of subject matter jurisdiction based on sovereign immunity.

-9-

No. 84359-1-I/10

B

Pitoitua next argues the trial court erred in concluding that the employees did not owe a duty of care to Letoi. We disagree.

"A cause of action for negligence requires the plaintiff to establish (1) the existence of a duty owed, (2) breach of that duty, (3) a resulting injury, and (4) a proximate cause between the breach and the injury." Tincani v. Inland Empire Zoological Soc'y, 124 Wn.2d 121, 127-28, 875 P.2d 621 (1994). The existence of a legal duty is a question of law. Pedroza v. Bryant, 101 Wn.2d 226, 228, 677 P.2d 166 (1984).

A duty of care is "an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another." Centurion Props. III, LLC v. Chi. Title Ins. Co., 186 Wn.2d 58, 64, 375 P.3d 651 (2016). In determining whether a duty is owed, "a court must not only decide who owes the duty, but also to whom the duty is owed, and what is the nature of the duty owed." Keller v. City of Spokane, 146 Wn.2d 237, 243, 44 P.3d 845 (2002).

1

Pitoitua argues that the employees owed Letoi a duty of reasonable care to protect her from reasonably foreseeable injury. The employees argue that because there is no special relationship between the employees and Letoi, there is no cognizable duty. We agree with the employees.

As a general rule, "in the absence of a special relationship between the parties, there is no duty to control the conduct of a third person so as to prevent [them] from causing harm to another." Robb v. City of Seattle, 176 Wn.2d 427, 433, 295 P.3d 212

-10-

No. 84359-1-I/11

(2013). The "special relationship" must be between the defendant and the victim or the defendant and the criminal for the imposition of liability. Robb, 176 Wn.2d at 433.

"[A] business owes a duty to its invitees to protect them from imminent criminal harm and reasonably foreseeable criminal conduct by third persons." Nivens v. 7-11 Hoagy's Corner, 133 Wn.2d 192, 205, 943 P.2d 286 (1997). A business or business owner has a special relationship with his or her business invitees. Wilbert v. Metro. Park Dist., 90 Wn. App. 304, 308, 950 P.2d 522 (1998).

Pitoitua alleged that the individual employee owed a duty of reasonable care. But there was no special relationship between the casino employees and Letoi. The casino itself may have owed Letoi a duty arising out of their special relationship as business and invitee, but this does not extend to the employees in their personal and individual capacity.

2

Pitoitua argues that the employees' failure to intervene or remove Tauave was a breach of their duty of reasonable care. Pitoitua also argues, for the first time on appeal, that the employees owed Letoi a common law duty of care and breached that duty through affirmative actions that harmed Letoi. Conversely, the employees argue that they had no legal duty to Letoi personally and individually as security personnel and did not commit any affirmative acts injuring Letoi. We agree with the employees.

"At common law, every individual owes a duty of reasonable care to refrain from causing foreseeable harm." Beltran-Serrano v. City of Tacoma, 193 Wn.2d 537, 550, 442 P.3d 608 (2019). This duty "encompasses the duty to refrain from directly causing harm to another through affirmative acts of misfeasance." Beltran-Serrano, 193 Wn.2d

-11-

at 550.  The common law distinguishes between torts based on "acts" and "omissions"; refusing to impose liability for the latter.  Brown v. MacPherson's, Inc., 86 Wn.2d 293, 300, 545 P.2d 13 (1975).

Misfeasance involves active misconduct resulting in positive injury to others and "necessarily entails the creation of a new risk of harm to the plaintiff."  Robb, 176 Wn.2d at 437.  Conversely, nonfeasance is a "passive inaction or failure to take steps to protect others from harm."  Robb, 176 Wn.2d at 437.  In Robb, the court held that the duty to prevent a third party's criminal act may only arise absent a special relationship where the actor's conduct constitutes misfeasance.  176 Wn.2d at 439.

In Robb, Seattle police officers failed to pick up and remove shotgun shells during a Terry stop.  Robb, 176 Wn.2d at 429.  The suspect returned after police left and used one of the cartridges to kill the plaintiff.  Robb, 176 Wn.2d at 429.  The court determined that the police did not commit misfeasance and thus had no independent duty to protect.  Robb, 176 Wn.2d at 429.  The court held that the duty to prevent a third party's criminal act may only arise absent a special relationship where the actor's conduct constitutes misfeasance.  Robb, 176 Wn.2d at 439.  The court reasoned that "the situation of peril . . . existed before law enforcement stopped [the subject], and the danger was unchanged by the officers' actions."  Robb, 176 Wn.2d at 438.  As a result, the officers only committed nonfeasance, which is insufficient to create a duty to protect. Robb, 176 Wn.2d at 439.[3]

This case is analogous.  Here, the employees failed to intervene and deescalate the situation, however, that is nonfeasance and does not constitute an affirmative act.

_____

[3] We reached the same conclusion in a similar context in Garcia v. Joey's 1983, Inc., No. 70395-1-I, (Wash. Ct. App. Mar. 24, 2014) (unpublished), https://www.courts.wa.gov/opinions/pdf/703951.pdf.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Tauave was also violent before and after the employees "made contact" with the couple. As in Robb, the situation of peril created by Tauave existed before the employees were involved and there is no allegation that the employees' "contact" changed the danger. 176 Wn.2d at 438.

The employees' failure to intervene or deescalate the encounter was at best nonfeasance, and therefore, without a special relationship, there is no duty for the employees to violate.

In her complaint, Pitoitua alleges that the "[d]efendants owed [Letoi] a duty of reasonable care to protect her from reasonably foreseeable injury" and that the "[d]efendants breached their duty of reasonable care by failing to take appropriate de-escalation steps in response to an obviously violent domestic encounter." The complaint also stated that the "[d]efendants had a duty to exercise due care toward [Letoi]" and that "[d]efendants knew, or should have known, that their failure to exercise due care in the performance of safety and security functions would cause Plaintiff to suffer severe emotional distress."

We decline to consider Pitoitua's argument that certain actions by the employees were "affirmative acts" as they were not raised in her complaint. RAP 9.12. The complaint alleged that the employees' failure to act was the breach of their duty, not an affirmative act of misfeasance.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 84359-1-I/14

3

Pitoitua argues that the affirmative act of "clearing" the danger posed by Tauave triggered the rescue doctrine, making the employees' liable for the subsequent harm to Letoi. We disagree.[4]

"The rescue doctrine recognizes that a duty to exercise reasonable care arises when a person undertakes 'to render aid to or warn a person in danger.'" Beltran-Serrano, 193 Wn.2d at 550 n.10 (quoting Brown, 86 Wn.2d at 299). Under the voluntary rescue doctrine, liability exists when the defendant makes the plaintiff's situation worse by: (1) increasing the danger; (2) misleading the plaintiff into believing the danger had been removed; or (3) depriving the plaintiff of the possibility of help from other sources. Folsom v. Burger King, 135 Wn.2d 658, 676, 958 P.2d 301 (1998). "If a rescuer fails to exercise such care and consequently increases the risk of harm to those he or she is trying to assist, the rescuer may be liable for physical damage caused." Folsom, 135 Wn.2d at 676.

Pitoitua's complaint is based on the employees' alleged inaction: (1) Gaube and Jeffreys' failure to confront Tauave or ask him to leave, (2) Ingram made contact with the couple but did not physically separate the couple and allowed them to leave together, and (3) Nguyen told Gaube and Norman to follow the couple from a distance. And in the complaint Pitoitua alleged that the employees failed to deescalate the situation.

Pitoitua cannot show that the employees intervened in an attempt to rescue. The employees did not act and did not attempt to render aid. Nor did Pitoitua argue that the

---

[4] Pitoitua did not argue the voluntary rescue doctrine in her complaint but argued it in response to the employees' motion to dismiss.

-14-

No. 84359-1-I/15

employees increased the danger, misled Letoi into believing the danger was removed, or removed the ability for help in another form.  <u>Folsom</u>, 135 Wn.2d at 676.

We conclude that Pitoitua's voluntary rescue doctrine theory fails as it is not sufficiently pleaded, and the alleged facts do not support the theory.

Affirmed.

_____
Mann, J.

WE CONCUR:

_____      _____
Bunnum, J                                   Smith, C.J.